[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 6, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-15867
Non-Argument Calendar

_____

D. C. Docket No. 04-01704-CV-ORL-JGG

BARBARA MAY,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(April 6, 2007)**

Before HULL, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Proceeding pro se, Barbara May appeals the district court's order affirming

the Commissioner's denial of her application for disability insurance benefits and supplemental security income ("SSI"), filed pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). After review, we affirm.

## I. BACKGROUND

May suffers from vasovagal syncope, which causes her to have dizzy spells, chronic low back pain, somatoform pain disorder and migraines. May worked as a housekeeper and as a plant care worker at a nursery. However, she stopped working in 1996 when she began experiencing episodes of dizziness and lightheadedness.

On June 30, 1996, May applied for disability benefits and SSI. Her application was denied initially and on reconsideration. May requested a hearing before an administrative law judge ("ALJ"), which was held on December 17, 1998. At the hearing, the ALJ heard testimony from May and a vocational expert ("VE"),Walter Todorowksi, regarding the availability of jobs for someone with May's impairments. The ALJ also considered May's medical records and various evaluations completed by both treating and consulting doctors and psychologists.

Following the hearing, the ALJ found that May suffered from severe impairments of lumbar strain, vasovagal syncope, somatoform pain disorder and vascular headaches. However, the ALJ found that May's allegations of disabling

pain and dizziness were not fully credible and were inconsistent with the objective medical evidence, noting that her syncope was controlled with medication and that two psychologists had concluded that May was preoccupied with her symptoms and exaggerated the severity of her illness. The ALJ concluded that May was unable to return to her past work, but could perform light work that did not require lifting more than 25 pounds, working in hazardous environments or sustaining attention or concentration for extend periods of time. The ALJ also found that, based on the VE's testimony, there were jobs in the economy that May could perform. The ALJ determined that May was not disabled and denied her claims.

The Appeals Council denied May's request for review, making the ALJ's decision the final decision of the Commissioner. May filed a complaint in the district court. On August 21, 2001, the district court reversed and remanded, instructing the ALJ to consider the opinions and medical statements of some of May's treating physicians and explain the weight given to their opinions; to evaluate May's subjective complaints; to consider a neurological evaluation of May and May's residual functional capacity; and to obtain clarifying testimony from the VE regarding the effect of the assessed limitations, using hypothetical questions that included May's documented exertional and non-exertional restrictions.

The ALJ held a second hearing on February 26, 2002 and heard testimony from May and from VE Joseph Agrusa. After the hearing, the ALJ again denied benefits. May filed a second complaint in the district court. The district court again reversed and remanded, instructing the ALJ to present a more complete hypothetical question to the VE.

At a third hearing, a different ALJ heard testimony from May and VE Agrusa. The ALJ incorporated by reference the prior ALJ decisions, found May was not disabled and denied benefits. In so doing, the ALJ found, inter alia, that May's testimony was inconsistent with the minimal clinical findings of record, which did not establish an underlying condition that confirmed the disabling severity of her symptoms or that could reasonably be expected to cause the extent of her pain and functional limitations in terms of severity, frequency or duration.

May filed a third complaint in the district court. The district court affirmed the Commissioner's decision to deny benefits. This appeal followed.

## II. DISCUSSION[1]

A. **May's Subjective Symptoms**

---

[1]We review a Commissioner's denial of benefits to determine whether the decision is supported by substantial evidence in the record and whether the correct legal standards were applied. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). Substantial evidence is more than a scintilla, but less than a preponderance, and consists of "such relevant evidence as a reasonable person would accept as adequate to support the conclusion." Id. (internal quotation marks omitted).

On appeal, May argues that the ALJ improperly evaluated her subjective complaints of pain and other symptoms.

A three-part "pain standard" applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002). The pain standard requires "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Id. "A claimant's subjective testimony supported by medical evidence that satisfies this pain standard is itself sufficient to support a finding of disability." Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995). Furthermore, if the ALJ does not credit the claimant's pain testimony, the ALJ "must articulate explicit and adequate reasons for doing so." Id. at 1561-62.

Here, the ALJ partially discredited May's allegations of disabling pain and non-exertional symptoms, such as dizziness and anxiety. In doing so, the ALJ properly applied the pain standard. The ALJ found that the medical evidence established that May had a history of fainting spells, degenerative disc disease and lumbar sprain, headaches, complaints of anxiety and somatoform pain disorder. However, the ALJ found that the clinical findings supported neither her claims of

5

the severity of her symptoms nor a condition that could reasonably be expected to cause such symptoms.

The ALJ further found that May's symptoms were inconsistent with the objective medical evidence, despite repeated diagnostic tests and examinations. The ALJ noted that May's cardiologist determined that her complaints of dizziness and lightheadedness were inconsistent with the usual presentation of her impairment, and that psychometrist Karen Wagner, psychologist Cydney Yerushalmi and psychiatrist Michael Gutman had noted that May was preoccupied with her symptoms and exaggerated their severity. The ALJ also observed that May had conceded that she could drive, dine out and shop for groceries, activities the ALJ found inconsistent with May's assertions of disabling pain.

These reasons are sufficiently explicit and adequate to partially discredit May and are supported by substantial evidence in the record. In addition to the medical evidence discussed above, medical records from May's treating physicians indicate that May's migraine headaches had improved, that May's back pain and anxiety were controlled with medication, that May had not had any recurrences of syncope (fainting) and that her episodes of lightheadedness were infrequent.

Contrary to May's assertions, the ALJ did not discredit her testimony solely because it was inconsistent with objective medical evidence. In evaluating the

6

intensity and persistence of a claimant's symptoms, the ALJ considers "all available evidence," including objective medical evidence, such as medical signs and laboratory findings, statements of the claimant and others about the claimant's symptoms, the medical opinions of treating physicians and nontreating physicians, and evidence of how the pain affects the claimant's daily activities and ability to work. See 20 C.F.R. §§ 404.1529(a), (c)(1), 416.929(a), (c)(1). However, the ALJ cannot reject the claimant's statements as to the intensity and persistence of her symptoms solely because they are not substantiated by objective medical evidence 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); see also SSR 96-7p. Here, the ALJ considered all the evidence presented, including May's statements and medical statements by May's treating and consulting physicians.

In addition, although a claimant's admission that she participates in daily activities for short durations does not necessarily disqualify the claimant from disability, Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997), that does not mean it is improper for the ALJ to consider a claimant's daily activities at all. See 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (specifically listing the claimant's daily activities as one of the factors to consider in evaluating the claimant's symptoms). Therefore, the ALJ properly considered May's self-reported limited daily life activities, along with all the other evidence in the record, in concluding

that her testimony regarding her subjective symptoms could not be fully credited.

**B.    Physicians' Medical Opinions**

May next argues that the ALJ did not properly evaluate several medical opinions in her case record, citing the social security regulations that provide guidelines for the ALJ to use when evaluating medical opinion evidence.  As the Commissioner points out, however, May did not assert these arguments before the district court.  Therefore, we do not address them.  See Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1161 (11th Cir. 2004) (explaining that, "[a]s a general principle, this Court will not address an argument that has not been raised in the district court" (internal quotation marks omitted)).

**C.    Vocational Expert Testimony**

Finally, May argues that the ALJ failed to consider VE Agrusa's testimony at the second hearing indicating that, if the opinions of Dr. Thomas Kim and Dr. Michael Brown were credited, no jobs existed in the economy that May could perform.

When, as here, a claimant has established that an impairment prevents her from performing her past relevant work, the burden shifts to the Commissioner to demonstrate that there are a significant number of jobs in the national economy that the claimant can perform.  Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir.

1999). When a claimant cannot perform a full range of work at a given level of exertion or has non-exertional impairments (such as pain or dizziness) that significantly limit basic work skills, the preferred method of demonstrating that the claimant can perform other jobs is through testimony of a vocational expert. Id. at 1229. However, for a vocational expert's testimony to be substantial evidence, the ALJ must pose a hypothetical to the vocational expert that includes all of the claimant's found impairments. Id.

Here, the hypothetical questions posed to VE Agrusa at the third hearing included all of May's impairments found by the ALJ. Specifically, the ALJ included in May's limitations that she was restricted to sedentary work with low stress and no exposure to heat or closed spaces, and that May infrequently experienced dizziness or lightheadedness, for which she needed to lie down in a calm environment for a period of at least thirty minutes.[2] The VE responded that there were jobs that May could perform under these limitations, including a call-out operator, a printed circuit board assembly touch up screener, a surveillance system monitor, a jewelry repairer or an optical final assembler.

May points to hypothetical questions she posed VE Agrusa during the

_____

[2]Notably, the district court's second remand was for the purpose of including in the hypothetical the thirty-minute rest periods May needed for occasional episodes of dizziness and lightheadedness. The Commissioner had conceded that this finding had been omitted from the hypothetical at the second hearing and had requested a remand.

second hearing. Specifically, VE Agrusa testified that there would be no jobs May could perform if May experienced episodes of lightheadedness and dizziness two to three times a week, as she had reported to Dr. Kim, and for which May testified she was required to sit down for thirty minutes or longer to recuperate. VE Agrusa also testified that there would be no jobs May could perform if May had migraines two to four times a month, as she reported to Dr. Brown, and for which May testified she was required to lie down for at least thirty minutes.

However, the ALJ discredited May's claims as to the severity, frequency and duration of her non-exertional limitations, such as her migraines and episodes of dizziness and lightheadedness, as inconsistent with clinical findings in the record. Therefore, the ALJ was not required to consider May's hypothetical questions to the VE that included this discredited testimony. See Crawford, 363 F.3d at 1161 (concluding that the ALJ is not required to include in a hypothetical question to the vocational expert findings that the ALJ has properly rejected as unsupported).

VE Agrusa's testimony at the third hearing was substantial evidence that jobs exist in the economy that May is able to perform. Therefore, the ALJ properly denied May disability insurance and SSI benefits.

**AFFIRMED.**