PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**09/29/99**
**THOMAS  K. KAHN**
**CLERK**

No. 98-6797

D. C. Docket No. 2:97-692-BH-C

CHRISTINE JONES,

Plaintiff-Appellant,

versus

KENNETH S. APFEL,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Alabama

**(September 29, 1999)**

Before TJOFLAT and DUBINA, Circuit Judges, and STORY*, District Judge.

DUBINA, Circuit Judge:

_____

*Honorable Richard W. Story, U.S. District Judge for the Northern District of Georgia, sitting by designation.

        In this social security case, we are called upon to decide if the testimony of a

vocational expert ("VE") trumps the Dictionary of Occupational Titles ("DOT") when the two are in conflict.  We hold that it does.

## I.  BACKGROUND

Christine Jones ("Jones") applied for supplemental security income benefits ("SSI") on February 22, 1994, alleging that pain in her back, hands, legs, and chest, and numbness on her right side left her disabled.  The Social Security Administration ("SSA") denied her application, and the Appeals Council denied it again on reconsideration.  Jones then requested a hearing before an administrative law judge ("ALJ").

At the hearing, Jones, then age 41, testified that she was a high school graduate, was married, and had six children, five of whom lived with her and her husband.[1]  Jones had worked as a restaurant cook, a fish filleter, and a corn-dog packager.  In 1992, Jones quit her job as a fish filleter because of pain and swelling in her right knee.  She could not stand for longer than 10 to 25 minutes and could not sit for extended periods of time.  Her daily activities consisted of bathing, watching television, reading, sleeping, and sometimes making breakfast.  She

---

[1]  A review of the record indicates that Jones's husband has filed for SSI and one of her children also receives SSI.  (Exhibit at 78-80).

testified that her back and knee pain prohibited her from doing housework, driving, bending, or stooping. She also asserted that she had numbness and pain in both arms, high blood pressure, sinus problems, and a defective heart valve which caused her heart to stop beating sometimes. She took medication on a daily basis, some of which made her drowsy. On a scale of one to ten, she rated her pain a seven or eight.

The ALJ questioned Charles Whitson, a VE, about Jones's assertions in her application for disability. The ALJ asked the VE to assume that Jones can perform sedentary level work that does not involve significant bending, stooping, crouching, crawling, or reaching above shoulder level, and does not involve exposure to extreme dust, fumes, gasses, irritants, and pollen. The ALJ also asked the VE to assume that Jones is best suited to working with objects rather than people and can perform routine, repetitive, and unskilled work activities. Based on this hypothetical, the VE testified to four categories of jobs that existed in the national and regional economy that such a claimant could perform: (1) a hand packager, (2) an agricultural sorter, (3) small-parts assembler, and (4) a product inspector.

Alternatively, the ALJ asked the VE to assume that the record supported Jones's claims of pain and discomfort and her limitations of ability to function. If

the record supported these claims, the VE responded that Jones would be precluded from the occupations he identified. On cross-examination, the VE stated that moderately severe pain would also preclude Jones from all of the identified occupations.

The ALJ reviewed the reports of three physicians and a psychologist who had treated or examined Jones. Dr. Bony F. Barrineau ("Dr. Barrineau") treated Jones after she twisted her right knee on the job. Dr. Barrineau gave Jones an injection for the pain and recommended wearing a knee sleeve. Several months later, Jones returned to Dr. Barrineau with continued pain. Upon further examination, Dr. Barrineau diagnosed a medial meniscus tear and indicated that this knee injury precluded her from standing for long periods of time. (Exhibit at 133-35).

Dr. Larry B. Thead ("Dr. Thead") performed a consultative examination of Jones. Based on his examination, Dr. Thead concluded that Jones "would have no difficulty performing work related physical activities such as sitting, standing, handling objects, hearing, and speaking." (Exhibit at 141-44).

Dr. Judy C. Travis ("Dr. Travis") treated Jones for various complaints over the course of a year. In February 1996, Dr. Travis completed a physical evaluation of Jones and found that she could frequently lift objects weighing less than ten

pounds; that her impairment did not affect her standing, walking, and sitting; that she could frequently bend, squat, kneel, and crawl, and occasionally climb and balance; that her impairment did not affect her grasping, reaching, pushing, and pulling; that her environmental restrictions included temperature extremes, chemicals, noise, fumes, and vibration; that she did not have chronic pain, but that she needed vocational rehabilitation to return to work; and that she would be an unreliable worker as a result of her condition and attendant limitations.

The psychologist, Kenneth R. Schneider, Ph.D., ("Dr. Schneider") completed a mental evaluation of Jones. Jones's full scale IQ score was 71; she functioned at the borderline mentally retarded range of intellectual development. Dr. Schneider indicated that Jones's pain, combined with her borderline mentally retarded range of intellectual functioning, could significantly impact her ability to function in a work setting. He concluded that Jones had moderate limitations in several areas. Dr. Schneider also indicated that Jones's condition was likely to deteriorate if she were placed under the stress of a job.

Based on this evidence, the ALJ determined that Jones had two severe impairments that impacted her ability to perform basic work activities: (1) a medial meniscus tear of the right knee, and (2) borderline intellectual functioning. The ALJ concluded, however, that these impairments did not preclude work activity.

5

The ALJ discredited Jones's allegations of pain and swelling in her knee, numbness of the joints, high blood pressure, sinus problems, heart fluttering, and side effects of medication. Although the ALJ determined that Jones could not perform her past relevant work, he found that she had the residual functional capacity to perform work related activities at the sedentary level of exertion. The ALJ noted that Jones could not perform the full range of sedentary work, but she could perform such jobs as hand packager, with 2,000 jobs existing regionally and 100,000 nationally; agricultural sorter, with 400 jobs existing regionally and 20,000 nationally; small parts assembler, with 2,500 jobs existing regionally and 120,000 nationally; and product inspector, with 2,000 jobs existing regionally and 100,000 nationally.

Following the ALJ's decision, Jones submitted additional medical records to the Appeals Council. The Appeals Council concluded, however, that the information was insufficient to reverse the ALJ's decision. The magistrate judge, upon judicial review, issued a report recommending affirmance of the ALJ's decision. Jones objected, but the district court adopted the magistrate's report and affirmed the denial of benefits.

## II. DISCUSSION

6

Jones presents two arguments on appeal: whether the ALJ properly assessed the effect of her limitations on her ability to perform sedentary work and whether the Commissioner proved that there were a substantial number of jobs in the economy that the claimant could perform. We affirm the Commissioner's decision on a disability benefits application if it is supported by substantial evidence and the Commissioner applied the correct legal standards. *See Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).

A. Erosion of the occupational base

Jones contends that by not questioning the VE about her limitations, the ALJ failed to properly assess the effect of her limitations on her ability to perform sedentary work. She further asserts that the ALJ did not consider the extent of any erosion of the occupational base, as determined by her residual functional capacity, and assess its significance in terms of the medical-vocational rules. The Commissioner responds that Jones's argument regarding the erosion of the occupational base is waived because she did not clearly present it to the district court.

A review of the record indicates that Jones did not raise this specific issue to the district court. There is no mention of this issue in her brief in support of her complaint nor in her appeal to the district court, so the district court did not have an

opportunity to consider the issue and rule on it. *See In re Pan American World Airways, Inc.*, 905 F.2d 1457, 1461-62 (11th Cir. 1990). Jones also cannot satisfy any exception to our well-settled rule; accordingly, we decline to consider this issue presented for the first time on appeal.

B.  Ability to perform other work in the economy

An individual who files an application for Social Security disability benefits must prove that she is disabled. *See* 20 C.F.R. § 416.912 (1998). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven that she is disabled. *See* 20 C.F.R. § 416.920. At the first step, the claimant must prove that she has not engaged in substantial gainful activity. *See id.* At the second step, she must prove that she has a severe impairment or combination of impairments. *See id.* If, at the third step, she proves that her impairment or combination of impairments meets or equals a listed impairment, she is automatically found disabled regardless of age, education, or work experience. *See id.* If she cannot prevail at the third step, she must proceed to the fourth step where she must prove that she is unable to perform her past relevant work. *See id.* At the fifth step, the burden shifts to the Commissioner to determine if there is other work available in significant numbers in the national economy that the claimant is able to perform. *See id.* If the Commissioner can

demonstrate that there are jobs the claimant can perform, the claimant must prove she is unable to perform those jobs in order to be found disabled. *See id.* This case centers on step five of the sequential evaluation process.

Jones argues that the ALJ erred in relying on the testimony of the VE to demonstrate that she could perform other jobs in the economy because that testimony conflicted with the DOT. According to the limitations identified by the ALJ and the job descriptions in the DOT, Jones contends that the Commissioner has failed to prove by a preponderance of the evidence that there are other jobs in substantial numbers in the economy which she can perform. The Commissioner responds that the ALJ appropriately relied on the VE's testimony to satisfy its burden of showing that Jones could perform work that exists in the national and regional economy. To the extent that the VE's testimony may have conflicted with the DOT, the Commissioner urges this court to follow the approach taken by the Sixth Circuit, or alternatively, the Eighth and Ninth Circuits, and hold that the VE's testimony trumps the DOT.

In a disability determination, once a claimant proves that she can no longer perform her past relevant work, the burden shifts to the Commissioner "to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Hale v. Bowen*, 831 F.2d 1007, 1011

(11th Cir. 1987). Often, the Commissioner meets this burden by relying on the grids. *See Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). When the claimant cannot perform a full range of work at a given level of exertion or the claimant has non-exertional impairments that significantly limit basic work skills, exclusive reliance on the grids is inappropriate. *See id.* In such cases, the Commissioner's preferred method of demonstrating that the claimant can perform other jobs is through the testimony of a VE. *See id.* In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. *See generally McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987).

The ALJ determined that Jones was not capable of performing a full range of sedentary work, so he appropriately called a VE to testify whether Jones, given her limitations, was capable of performing other jobs in the national economy. The VE identified the above-mentioned jobs that Jones could perform with her limitations. Notwithstanding, Jones argues that the ALJ's reliance on the VE's testimony was improper because the exertional and environmental requirements of some of the jobs identified by the VE, such as hand packager and nut sorter, conflict with the DOT. Specifically, Jones notes that there are no unskilled sedentary packaging jobs in the DOT and the DOT lists only eight agricultural

sorter jobs which are unskilled, sedentary occupations.

Several other circuits have analyzed the conflict between the VE's testimony and the DOT. The Sixth Circuit in *Conn v. Secretary of Health and Human Services*, 51 F.3d 607, 610 (6th Cir. 1995), held that the social security regulations do not require the Commissioner or the VE to rely on classifications in the DOT. Therefore, an ALJ may rely on the VE's testimony even if it is inconsistent with the DOT. The Eighth and Ninth Circuits hold that the DOT controls unless it can be "rebutted . . . with VE testimony which shows that 'particular jobs, whether classified as light or sedentary, may be ones that a claimant can perform.'" *Montgomery v. Chater*, 69 F.3d 273, 276 (8th Cir. 1995) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995)). The VE's task, therefore, is to determine whether there are jobs in the region which the claimant can perform with her precise disabilities or limitations. If the VE can accomplish this task, then the DOT does not control. 69 F.3d at 277.

In a recent case, the Tenth Circuit held that before an ALJ may rely on expert VE testimony as substantial evidence to support a determination of nondisability, the ALJ must ask the VE how his or her testimony corresponds with the DOT. *See Haddock v. Apfel*, ___ F.3d ___ , No. 98-7063 (10th Cir., July 13, 1999). The Tenth Circuit rejected the approach of the Sixth Circuit in *Conn,* and

11

followed the reasoning of the Eighth and Ninth Circuits. The court noted that the ALJ's duty is to develop the record fully, and to do so, the ALJ must question the VE about the source of his or her opinion and any deviations from a publication recognized as authoritative by the agency's own regulations. *Id.* at ___. The court stated that

> [w]e do not mean by our holding that the Dictionary of Occupational Titles "trumps" a VE's testimony when there is a conflict about the nature of a job. We hold merely that the ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability.

*Id.* at ___. *See also Tom v. Heckler*, 779 F.2d 1250, 1255-56 (7th Cir. 1985) (remanding case because of conflict between the VE's testimony and the DOT); *Mimms v. Heckler*, 750 F.2d 180, 186 (2d Cir. 1984) (remanding case for reconsideration of jobs claimant could perform in light of DOT descriptions).

We agree with the Sixth Circuit that when the VE's testimony conflicts with the DOT, the VE's testimony "trumps" the DOT. We so hold because the DOT "is not the sole source of admissible information concerning jobs." *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994). The DOT itself states that it is not comprehensive. It provides occupational information on jobs in the national economy, and it instructs "DOT users demanding specific job requirements [to]

12

supplement th[e] data with local information detailing jobs within their community." Dictionary of Occupational Titles, Special Notice at xiii (4th ed. 1991); *Barker*, 40 F.3d at 795. Additionally, the Code of Federal Regulations states that the SSA will take administrative notice of reliable job information available from various governmental and other publications, such as the DOT. *See* CFR § 404.1566(d)(1). By this wording, the SSA itself does not consider the DOT dispositive.

As noted in the DOT, the ALJ should supplement the DOT data with local information detailing jobs in the regional community. The VE provides this vital information. In this case, the VE testified that he compiled the employment information from a personal survey, contact with employers and other VEs and a survey of literature such as census reports and county business patterns. (Exhibit at 71). As such, we conclude that the VE's testimony is crucial to an ALJ's determination at step 5 of the sequential evaluation process. Due to the significance of the VE's testimony, we agree with the Sixth Circuit and hold that an ALJ may rely solely on the VE's testimony.[2]

Following the Sixth Circuit's analysis, we see no error in this case. The

---

[2] Our holding does not preclude reliance on the DOT; reliance on the DOT is within the discretion of the ALJ.

13

ALJ's determination that Jones was not disabled is supported by substantial evidence. The VE identified several jobs that Jones could perform with her limitations. The VE identified no jobs that went beyond Jones's residual functional capacity, even under the definitions in the DOT. The VE even identified the DOT classifications for sedentary work which Jones could perform. Accordingly, we affirm the district court's order affirming the Commissioner's denial of SSI benefits to claimant Jones.

AFFIRMED.