[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 12, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-16463
Non-Argument Calendar

_____

D. C. Docket No. 04-00881-CV-J-MCR

PATRICIA M. JONES,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(May 12, 2006)**

Before BARKETT, MARCUS  and WILSON, Circuit Judges.

PER CURIAM:

Patricia M. Jones appeals the district court's affirmance of the Social

Security Administration's ("SSA") denial of supplemental security income

("SSI"), 42 U.S.C. § 1383(c)(3), and disability insurance benefits ("DIB"), 42

U.S.C. § 405(g). On appeal, Jones argues that the administrative law judge's

("ALJ") determination that she was not disabled during the relevant time period

was not supported by substantial evidence because (1) the ALJ did not consider the

relevant medical evidence and Social Security Ruling ("SSR") 02-2p, (2) the ALJ's

hypothetical question posed to the vocational expert did not comprehensively

describe Jones's impairments, (3) the ALJ's finding with regard to Jones's mental

impairment was not supported by substantial evidence, and (4) the ALJ's finding

that Jones's carpal tunnel syndrome was corrected by surgery was also not

supported by substantial evidence. Jones further argues that the ALJ erred in

failing to consider her eligibility for a closed period of disability. We will address

each of Jones's arguments in turn.

I.    ALJ's Determination of Not Disabled

     We review a social security case to determine whether the Commissioner's

decision is supported by substantial evidence and whether the correct legal

standards were applied. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).

The Commissioner's decision will not be disturbed "if, in light of the record as a

whole, it appears to be supported by substantial evidence," which is "more than a

scintilla and is such relevant evidence as a reasonable person would accept to support a conclusion." Id. at 1439-40.

A claimant applying for disability benefits must prove that she is disabled. 20 C.F.R. § 404.1512; Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). The Social Security Regulations outline a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520; Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). First, the claimant must show that she has not engaged in substantial gainful activity. Jones, 190 F.3d at 1228. Second, she must prove she has a severe impairment or combination of impairments. Id. In step three, if her impairment meets or equals a listed impairment, she is automatically found disabled. Id. If it does not, she must move on to step four, where she must prove that she is unable to perform her past relevant work. Id. Finally, if the claimant cannot perform past relevant work, then the burden shifts to the Commissioner in the fifth step to show that there is other work available in significant numbers in the national economy that the claimant is able to perform. Id.

## A.    Medical Evidence and SSR 02-2p

On appeal, Jones argues that the ALJ's decision did not properly incorporate the clarification issued by the Commissioner's SSR 02-2p to the extent that the

3

ruling indicates that (1) chronic fatigue may be associated with IC, and (2) IC symptoms and the effectiveness of a given treatment can vary. Jones maintains that the ALJ's finding, that the record did not corroborate a systemic source for her fatigue, is contradicted by SSR 02-2p. Jones also contends that Dr. Reisfield's report directly contradicted the ALJ's findings that (1) Jones's claim that she needed to lie down two or three times per day was self-serving, and (2) Jones can sustain sedentary work activities.

Social Security Ruling 02-2p clarifies the Commissioner's policies for evaluating claims for disability on the basis of IC. 67 Fed.Reg. 67436-01. Social Security rulings "are binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1). According to SSR 02-2p, IC "<u>may</u> be associated with other disorders," including chronic fatigue syndrome. 67 Fed.Reg. 67436-01 (emphasis added). Once the ALJ determines that a claimant has an IC impairment, the ALJ must determine, in accordance with the five-step sequential evaluation process, whether the impairment prevents the claimant from doing past relevant work or other work existing in substantial numbers in the national economy. <u>Id.</u>

Here, Jones maintains that the ALJ's finding, that "the record does not corroborate any systemic source for" Jones's chronic fatigue, is not consistent with

4

SSR 02-2p because the ruling explicitly states that chronic fatigue may be associated with IC. However, SSR 02-2p simply notes that some IC claimants may also have chronic fatigue. The ruling, therefore, does not require a finding of chronic fatigue for each claimant that has IC. Further, as the Commissioner notes, the ALJ's written decision is consistent with SSR 02-2p in that the ALJ followed the five-step sequential evaluation process once the ALJ made a finding that Jones had an IC impairment. See 67 Fed.Reg. 67436-01. Thus, although the ALJ's decision does not specifically cite to SSR 02-2p, the record nevertheless does not support Jones's contention that the ALJ failed to consider SSR 02-2p or to properly incorporate the ruling.

Additionally, Jones argues that the ALJ failed to "accurately and completely report the opinion of Dr. Reisfield" with regard to Dr. Reisfield's conclusions on Jones's inability to work. The Commissioner maintains that Jones waived this issue by failing to raise it before the district court. See also Jones, 190 F.3d at 1228 (declining to consider an argument raised for the first time on appeal). As Jones notes in her reply, however, she did assert in the district court that the district court overlooked Dr. Reisfield's assessment that Jones's symptoms were "exacerbated by standing, walking, or sitting" (although Jones did not mention Dr. Reisfield by name, she did cite to his report following her assertion). Thus, to

5

the extent that Jones argues on appeal that the ALJ did not completely and accurately report that specific portion of Dr. Reisfield's opinion, her argument is not waived. In all other respects concerning Dr. Reisfield's report, however, Jones has waived those arguments. See Jones, 190 F.3d at 1228.

Nonetheless, Jones's argument is without merit because the ALJ clearly determined that Jones was limited to sedentary work activities in which she was not required to climb, crawl, stoop, or bend, and in which she would have the option to alternate between sitting and standing. Moreover, the ALJ noted that Dr. Reisfield found that Jones's symptoms were "exacerbated by standing, walking, or sitting," and that "[l]ying down, an IC diet, opioids, and inferential therapy ameliorated her symptoms." Thus, the ALJ's assessment is consistent with the findings set forth in Dr. Reisfield's report.

## B.    Hypothetical Question to the Vocational Expert

On appeal, Jones argues that the ALJ's hypothetical did not include Jones's impairments with regard to her decreased ability to concentrate and focus. Jones asserts that the ALJ did not incorporate Dr. Yates's finding, that her ability to concentrate was impacted by her physical impairments, into the hypothetical.

Despite the ALJ's finding at step four of the sequential evaluation, that Jones could perform her past relevant work as a telemarketer, the ALJ went on to step

five of the sequential evaluation and posed a hypothetical to the vocational expert ("VE") to determine whether Jones could perform other work that existed in significant numbers in the national economy. In order for a VE's testimony to constitute substantial evidence that a claimant can perform other work, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Jones, 190 F.3d at 1229.

First, the ALJ found that Jones's activities of leading an IC support group, attending church, visiting her sister, reading, watching television, and using the computer did not support a finding that Jones's concentration was deficient. The ALJ noted that Jones did not indicate that she had any difficulty comprehending or following along when she read, watched television, or used the computer. Based on Jones's own testimony, then, the ALJ did not have reason to suspect that Jones had concentration difficulties. Second, Dr. Yates's report indicated that Jones's thought process was coherent, her concentration and memory abilities were fair, and her orientation was good. Dr. Yates also found that Jones had good judgment and a strong work ethic, but that her many physical problems seemed to impede her employability. Therefore, Dr. Yates's report, coupled with Jones's own testimony concerning her daily activities, do not necessitate a finding that Jones has severe impairments in her concentration. Accordingly, the ALJ's decision not

7

to include Jones's concentration abilities in the hypothetical to the VE is supported by substantial evidence in the record. See Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1161 (11th Cir. 2004) (holding that an ALJ is "not required to include findings in the hypothetical that the ALJ [has] properly rejected as unsupported").

## C. Jones's Mental Impairments

Jones argues on appeal that the ALJ's finding with regard to her mental status, specifically, that her mental problems were "situational" to stress over financial and family problems, was inaccurate and was not substantially supported by the record. Jones maintains that Dr. Larsen's assessment of Jones's mental status described her as more severely mentally impaired than the ALJ's decision suggested. Jones contends that Dr. Larsen found that Jones's mental status was "very complicated," while the ALJ found that her mental health was "situational."

As the Commissioner notes, the ALJ's finding, that Jones did not suffer from mental impairments, was supported by substantial evidence. First, the ALJ's finding that Jones's mental difficulties were situational was consistent with Dr. Larsen's 2000 findings that, while Jones was not then depressed, she had suffered from depression and was living in a very stressful environment. Second, some of Jones's other treating physicians noted that Jones did not exhibit any evidence of a psychological impairment. Dr. Tran indicated in 2001 that he did not

8

find that Jones had any symptoms of a mental disorder. Further, Dr. Rowe noted in 2003 that Jones did not have any psychological symptoms, that her affect was normal, and that her mood was pleasant. Accordingly, the record substantially supports the ALJ's determination that Jones's mental impairments, if any, were situational.

**D. Jones's Carpal Tunnel Syndrome**

On appeal, Jones argues that her carpal tunnel syndrome was not corrected by surgery and that the ALJ's finding to the contrary was incorrect. Jones contends that Dr. Yoffee's report supports her assertion. Jones also maintains that Dr. Scales's report, that Jones suffered from "'simple chronic changes compatible with her prior carpal tunnel surgery but there were no acute changes,'" actually means that she had continuing (chronic) problems rather than short but severe (acute).

Based on the record, the ALJ's finding with regard to Jones's carpal tunnel syndrome is supported by substantial evidence. Here, the ALJ found that "[p]ost-operative examinations of [Jones's] upper extremities were negative for objective signs of nerve compression, and there is no evidence that her carpal tunnel syndrome was not corrected by surgery." In 2000, Dr. Yoffee found that, among Jones's multiple medical issues, "her main problems appear[ed] to be recurrence of

9

her carpal tunnel syndrome as well as severe depression and chronic anxiety." Dr. Yoffee's neurological and skeletal examinations were negative, and he recommended that Jones receive "further neurological and psychiatric evaluation." Later in 2000, Dr. Scales performed an EMG/Nerve Conduction study, which revealed "simple chronic changes compatible with [Jones's] prior carpal tunnel surgery but there were no acute changes." However, Dr. Scales did not recommend any further testing, treatment, or operations for Jones's carpal tunnel syndrome. In May 2001, Dr. Tran examined Jones and found that Jones had a history of carpal tunnel that improved after surgery on both of her wrists. Dr. Tran also found that, while Jones had pain in her wrists, she did not have any (1) limitations of movement, (2) numbness, (3) difficulty with her grip, or (4) limitations of her gross and fine movements. Dr. Tran diagnosed that Jones had a carpal tunnel operation in both hands, but he did not recommend any further tests or treatment with respect to Jones's carpal tunnel syndrome.

Given the medical evidence on the record, it cannot be said that the ALJ's determination, that Jones's carpal tunnel syndrome had been corrected, was not supported by substantial evidence. In fact, Dr. Yoffee's examination, which indicated that Jones's main problems appeared to include the recurrence of her carpal tunnel syndrome, took place prior to Dr. Scales's and Dr. Tran's

10

examinations that each found Jones's carpal tunnel syndrome had not worsened. Further, even Dr. Yoffee did not make an explicit diagnosis that Jones had recurring carpal tunnel syndrome, nor did he suggest a treatment plan more than recommending additional neurological evaluation. It appears that Dr. Scales's and Dr. Tran's evaluations were just the additional testing that Dr. Yoffee called for, and those evaluations did not reveal that Jones's carpal tunnel syndrome had not been corrected. Thus, the ALJ's finding with regard to Jones's carpal tunnel syndrome was supported by substantial medical evidence.

## II.     Closed Period of Disability

On appeal, Jones also argues that, if the ALJ's determination that Jones did not suffer from disabling IC was correct, the ALJ should have considered Jones's eligibility for a closed period of disability because Jones's debilitating symptoms exceeded a 12-month duration.

Jones's argument on appeal does not sufficiently provide us with the specific 12-month time period for which she believes she is entitled to a closed period of disability. Jones merely argues that her disability lasted more than 12 months. To the extent that Jones's argument is that her closed period of disability was the entire period from her alleged onset date until her administrative hearing, Jones's

11

argument must fail because, based on the above analysis, the ALJ's finding, that Jones was not disabled for any time during that entire period, was supported by substantial evidence.  Accordingly, the ALJ did not err in failing to consider Jones's eligibility for a closed period of disability.

Upon review of the record, and consideration of the parties' briefs, we discern no reversible error.  Thus, we affirm the district court's affirmance of the SSA's denial of SSI and DIB.

**AFFIRMED.**