[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-15596
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 15, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-61605-CV-WCT

JUSTUS PEELER,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,
Michael Astrue,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 15, 2010)

Before BLACK, HULL and WILSON, Circuit Judges.

PER CURIAM:

Justus Peeler appeals the magistrate judge's order affirming the

administrative law judge's ("ALJ") denial of his application for supplemental security income ("SSI") benefits, 42 U.S.C. § 1383(c)(3).[1] After review, we affirm.

## I. BACKGROUND

In 2005, Peeler applied for SSI benefits due to back problems and a hip replacement. Peeler alleged that he was disabled as of March 15, 1990.

After a hearing, the ALJ evaluated Peeler's claim using the five-step sequential process. With regard to the first three steps, the ALJ found that Peeler: (1) had not engaged in substantial gainful employment in the past fifteen years; (2) had severe impairments of "status post left hip replacement," "status post broken right ankle with internal fixation" and "status post left wrist internal fixation," but that these impairments did not meet or medically equal one of the listed impairments in the regulations; and (3) had the residual functional capacity ("RFC") to perform "a wide range of sedentary work activities."[2] With regard to Peeler's residual functional capacity, the ALJ found that Peeler (1) could stand and walk for less than two hours of an eight-hour day; (2) could sit for six to eight hours with the ability to alternate positions; (3) could occasionally use his left hand

---

[1]The parties consented to proceeding before a magistrate judge.

[2]Residual functional capacity, or RFC, is a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. § 416.945(a).

2

for performing gross manipulation with no limitation on his capacity for fine dexterity or reaching; (4) could not climb, balance or crouch; (5) could occasionally twist, stoop and kneel; (6) could not be exposed to unprotected heights or hazardous machinery. At the fourth step, the ALJ found that Peeler had no past relevant work.

As to the fifth step, the ALJ noted Peeler's age of 41, which qualified him as a "younger individual" under the regulations, limited education, and RFC. The ALJ acknowledged that Peeler's ability to perform the full range of sedentary work had been "impeded by additional limitations." The ALJ nonetheless found that jobs existed in significant numbers in the national economy that Peeler could perform.

To this end, the ALJ relied upon the hearing testimony of Dr. Howard Feldman, a vocational expert ("VE"). In response to a hypothetical question from the ALJ, Dr. Feldman testified that a person of Peeler's age, educational background and physical limitations (listed above) could perform some sedentary jobs. Dr. Feldman identified cashier II, Dictionary of Occupational Titles ("DOT") § 211.462-010, of which there were 18,124 positions in the local economy and over 3 million in the national economy. Dr. Feldman explained that the cashier II job was listed as light work in the DOT, but in his opinion, "well over 50 percent

3

would be sedentary in nature." Dr. Feldman explained that he relied on his own knowledge to determine the fifty percent figure and that the DOT did not describe individual jobs, but represented a "conglomeration of jobs."

Additionally, Dr. Feldman identified as sedentary, unskilled jobs someone like Peeler could perform: (1) ticket or toll taker, DOT § 211.462-038, of which there were 701 such jobs in the local economy and 100,000 in the national economy; and (2) bench assembler, DOT § 706.684-022,[3] of which there were 7,245 in the local economy and over a million in the national economy.

The ALJ's order stated that "[p]ursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." Based on Dr. Feldman's testimony, the ALJ found that Peeler was not disabled at step five of the sequential evaluation process. The Appeals Council denied review.

Peeler filed this action in the district court. The case was referred to a magistrate judge, who granted the Commissioner's motion for summary judgment and affirmed the ALJ's decision. Peeler filed this appeal.

## II. DISCUSSION

---

[3]The hearing transcript states that Dr. Feldman identified the bench assembler job as DOT § 796.684-022, but the DOT section corresponding to that job is actually DOT § 706.684-022. This appears to be a either a typographical error or a misstatement by Dr. Feldman.

## A. Sequential Evaluation

Under the five-step sequential evaluation used to determine whether the claimant is disabled, the ALJ considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if not, whether the claimant has the RFC to perform his past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, the claimant can "make an adjustment to other work" that exists in significant numbers in the national economy. See 20 C.F.R. § 416.920(a)(4), (c)-(g): see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). If the claimant proves that he cannot do his past relevant work at the fourth step, the burden shifts to the Commissioner to show, at the fifth step, that the claimant can make an adjustment to other work available in the economy. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).

## B. Fifth Step – Existence of Work

On appeal, Peeler does not challenge the ALJ's findings as to the first four steps. Instead, Peeler argues that the ALJ committed legal error at the fifth step. Specifically, Peeler contends the ALJ could not rely on Dr. Feldman's testimony as

to the number of sedentary, unskilled jobs in the national economy Peeler could perform because Dr. Feldman's testimony conflicted with the DOT.[4]

At the fifth step, the Commissioner shows that work exists in the national economy when "it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions of the country." 20 C.F.R. § 416.966(a). In determining whether unskilled, sedentary, light or medium work exists in the national economy that the claimant can perform, the ALJ can "take administrative notice of reliable job information available from various governmental and other publications," such as the DOT, which is published by the Department of Labor. Id. § 416.966(d)(1).[5]

The ALJ can also use a VE. See id. § 416.966(e) (stating that the VE can be used to determine "whether [the claimant's] work skills can be used in other work and the specific occupations in which they can be used," as well as for other "similarly complex issue[s]"); see also Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995) (explaining that when the claimant has non-exertional impairments, the

---

[4]We review de novo the legal principles underlying the Commissioner's final decision, but review "the resulting decision only to determine whether it is supported by substantial evidence." Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).

[5]Sedentary work involves lifting no more than ten pounds at a time, with occasional lifting or carrying of articles such as docket files, ledgers or small tools, and occasional walking or standing. 20 C.F.R. § 416.967(a). Light work involves lifting no more than twenty pounds at a time, with frequent lifting and carrying of objects weighing up to ten pounds, and a good deal of walking, standing or sitting and manipulating arm and leg controls. Id. § 416.967(b). "These terms have the same meaning as they have in the [DOT]." 20 C.F.R. § 416.967.

Commissioner demonstrates that the claimant can perform other jobs through VE's testimony); Allen v. Sullivan, 880 F.2d 1200, 1202 (11th Cir. 1989) (explaining that the ALJ relies on VE testimony to show the existence of work in the economy when the claimant cannot perform a full range of work at a given level of exertion).

While the DOT "provides occupational information on jobs in the national economy," it "is not comprehensive" nor "the sole source of admissible information concerning jobs." Jones, 190 F.3d at 1230 (quotation marks omitted). Consequently, "the ALJ should supplement DOT data with local information detailing jobs in the regional community." Id. Furthermore, "when the VE's testimony conflicts with the DOT, the VE's testimony 'trumps' the DOT." Id. at 1229-30. If the hypothetical question posed by the ALJ contains all the claimant's impairments, the VE's testimony of other jobs the claimant can perform constitutes substantial evidence to support the Commissioner's decision. Id. at 1229.

## C.    Peeler's Claim

Here, Dr. Feldman described the jobs of toll collector, bench assembler and over fifty percent of cashier II jobs as sedentary. The DOT classifies these three jobs as light work. See Dep't of Labor, Dictionary of Occupational Titles ("DOT"),§§ 211.462-010 (cashier II), 211.462-038 (toll collector), 706.684-022 (bench assembler) (rev. 4th ed. 1991). The ALJ did not err in relying on Dr.

Feldman's testimony even if it conflicted with information in the DOT because under our precedent Dr. Feldman's testimony trumps the DOT. See Jones, 190 F.3d at 1229-30.

Peeler points to Social Security Ruling 00-4p ("SSR 00-4p"), which provides that "[n]either the DOT nor the [VE's testimony] automatically 'trumps'" when there is a conflict between the two and instructs the ALJ to "elicit a reasonable explanation for the conflict before relying on the VE [testimony] . . . ." SSR 00-04p, 2000 WL 1898704 (Dec. 4, 2004).

However, as to cashier II jobs, ALJ complied with SSR 00-4p and obtained a reasonable explanation for any conflict with the DOT.[6] When Dr. Feldman identified cashier II jobs as sedentary jobs Peeler could perform, the ALJ confirmed that Dr. Feldman's testimony adhered to the descriptions in the DOT. Dr. Feldman then acknowledged that the jobs were "listed as light in the DOT" and explained that it was his opinion that over fifty percent of the cashier II jobs could be performed at the sedentary level. Dr. Feldman further explained that any discrepancy between his description and the DOT was based on his knowledge and

---

[6]Our predecessor Court has concluded that Social Security Rulings are not binding on this Court. See B.B. v. Schweiker, 643 F.2d 1069, 1071 (5th Cir. Unit B Apr. 1981). We are bound by decisions issued by Unit B panels of the former Fifth Circuit. Stein v. Reynolds Sec., Inc., 667 F.2d 33, 34 (11th Cir. 1982). However, even in the absence of our Jones precedent, the ALJ did not err in relying on Dr. Feldman's testimony because, as we explain, the ALJ complied with SSR 00-04p with regard to the cashier II jobs.

necessary because the DOT does not describe specific jobs, but conglomerations of jobs. Notably, SSR 00-4p supports Dr. Feldman's explanation, stating that the DOT provides descriptions about occupations, not each of the numerous jobs represented in an occupation and that a VE "may be able to provide more specific information about jobs or occupations than the DOT." SSR 00-4p.[7]

The ALJ posed a hypothetical question to Dr. Feldman that included all of Peeler's impairments. In response, Dr. Feldman identified work that existed in the national economy that someone like Peeler could perform. The ALJ did not commit legal error in relying upon Dr. Feldman's testimony even if it conflicted with the DOT. Thus, Dr. Feldman's testimony constituted substantial evidence that Peeler was not disabled. See Jones, 190 F.3d at 1229.

**AFFIRMED.**

---

[7]Social security regulations permit the ALJ to rely on a VE for his expertise and knowledge. See 20 C.F.R. § 416.960(b)(2) (stating that the a VE "may offer relevant evidence within his or her expertise or knowledge"). Dr. Feldman's resume indicates that he has experience as a vocational rehabilitation counselor and vocational evaluator. Peeler did not challenge Dr. Feldman's qualifications as a VE at the administrative hearing.