[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-15263
Non-Argument Calendar

_____

D.C. Docket No. 8:13-cv-00626-MSS-TGW

JOSEPH W. CARPENTER,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 17, 2015)

Before JORDAN, JULIE CARNES, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Joseph Carpenter appeals the district court's order affirming the

Administrative Law Judge's ("ALJ") denial of his application for disability

insurance benefits.  On appeal, Carpenter argues that the ALJ erred by failing to (1) obtain an updated medical expert opinion in light of new evidence in the record, (2) set forth good cause for rejecting the opinion of one of his treating physicians, and (3) include all of his limitations when posing a hypothetical question to a vocational expert at the hearing.  After careful review, we affirm.

## I.    BACKGROUND

In November 2008, Carpenter filed an application for disability insurance benefits with the Social Security Administration.  Alleging a disability onset date of April 4, 2004, Carpenter represented that he suffers from herniated discs at L4-5 and L5-S1 as a result of an injury he sustained in 2001 while working as an emergency medical technician and firefighter.  Carpenter contended that this back injury causes him pain, numbness, and tightness in his left leg, which prevents him from working because he cannot sit or stand for long periods of time, and because he needs to lean on the counter or lie on his back for multiple hours a day to relieve the pain.  As to his mental health, Carpenter asserted that he experiences memory loss, anxiety, irritability, and depression.

The Commissioner of Social Security (the "Commissioner") denied Carpenter's application for benefits initially and upon reconsideration, on March 20, 2009, and August 28, 2009, respectively.  After the Commissioner issued her decisions, Carpenter requested, and received, a hearing.  The hearing before an

2

ALJ occurred in October 2010, at which time both Carpenter and a vocational expert testified.

Following the hearing, the ALJ issued a decision concluding that Carpenter was not disabled for purposes of disability benefits' eligibility. Specifically, upon reviewing the medical evidence of record, the ALJ found that Carpenter suffered from degenerative disc disease and generalized anxiety disorder, and that these conditions would place some limitations upon his "ability to do basic work activities." But because Carpenter's limitations did not markedly restrict his daily living and social functioning, caused only moderate difficulties with respect to his concentration, persistence, and pace, and had not resulted in an episode of decompensation, the ALJ determined that they did not meet or equal those limitations "listed" in Social Security Administration regulations. The ALJ further determined that, given the severity of his limitations, Carpenter could perform light, routine work—with restrictions on activities such as climbing ropes and crawling—on a sustained basis with regular breaks. Based on this finding, coupled with the ALJ's concurrence in the vocational expert's opinion that a significant number of jobs accommodating Carpenter's limitations existed in the national economy, the ALJ concluded that Carpenter was not disabled.

In March 2013, Carpenter filed a complaint in the district court challenging the denial of disability benefits, which the district court referred to a magistrate

judge.  There, Carpenter raised four challenges to the Commissioner's determination.  Carpenter asserted that:  (1) the ALJ erred by finding that no new evidence had been submitted after a medical consultant reviewed his file on July 29, 2009 and thereafter recommended that Carpenter's limitations did not meet or equal those listed in Social Security Administration regulations; (2) the ALJ failed to articulate good cause for rejecting the opinions of Dr. Goldman, Carpenter's treating psychiatrist, and (3) Dr. Kochno, who submitted a medical source statement regarding his physical limitations; and (4) substantial evidence does not support the hypothetical posed by the ALJ to the vocational expert, as it did not include all of Carpenter's limitations, especially those identified by Drs. Goldman and Kochno.

The magistrate judge issued a report and recommendation in which he concluded that the denial of disability benefits should be affirmed, noting that the ALJ reviewed the relevant "medical evidence at length" and the record supports his conclusions.  Over Carpenter's objections, the district court adopted the report and recommendation and rendered judgment in favor of the Commissioner.  This appeal followed.

4

## II.  DISCUSSION

### A.  Standard of Review

We review de novo the legal principles underlying the Commissioner's final decision, but review the resulting decision only to determine whether substantial evidence supports it.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation omitted).  We do not "decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]."  *Id.*  In other words, "'[e]ven if the evidence preponderates against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence.'"  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

### B.  The Process for Determining Carpenter's Entitlement to Disability Insurance Benefits

The Social Security Administration regulations establish a five-step, sequential evaluation process by which the Commissioner determines whether a claimant is disabled, and thus entitled to benefits.  *Winschel*, 631 F.3d at 1178; 20 C.F.R. §§ 404.1520(a)(4), 404.1520a(a).  The first two steps of that evaluation require the claimant to prove that he (1) has not engaged in substantial gainful

5

activity and that he (2) has a severe impairment or combination of impairments. *Winschel*, 631 F.3d at 1178; 20 C.F.R. § 404.1520(a)(4)(i)–(ii); *see Moore*, 405 F.3d at 1211 ("An individual claiming Social Security disability benefits must prove that she is disabled.") and 20 C.F.R. § 416.912(a) ("In general, you have to prove to us that you are blind or disabled."). If the claimant does not meet his burden on either inquiry, he is determined to be "not disabled" regardless of his age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(i)–(ii), (b)–(c).

If the claimant does meet his burden on the previous two steps, he proceeds to the third, at which point he must prove that his impairment meets or equals "the severity of the specified impairments in the Listing of Impairments"; i.e., Appendix 1 to Part 404 of the Social Security Administration regulations. *Winschel*, 631 F.3d at 1178; 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairment is sufficiently severe under the regulations, the Commissioner considers him to be disabled without regard to his age, education, or work experience, and he is entitled to benefits; if not, the Commissioner takes those factors into account. 20 C.F.R. §§ 404.1501, 404.1505(a), 404.1520(a)(4)(iii), (d)–(e); *see Ambers v. Heckler*, 736 F.2d 1467, 1470 (11th Cir. 1984) ("[C]onsideration of the fact that [the claimant] could return to her past work is not a relevant inquiry once she has met the Listing of Impairments in Appendix 1."). But if, in this third step, the claimant's impairments do not meet or equal those listed in the

6

regulations, the Commissioner must determine the claimant's residual functional capacity, before next proceeding to the fourth step. *Id.* §§ 404.1520(a)(1)(4), (e), 404.1545. A claimant's residual functional capacity is "an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), (3)–(4).

Once a claimant's residual functional capacity has been determined, the disability evaluation advances to step four, where the Commissioner considers whether "the claimant can perform any of his [] past relevant work despite the impairment[.]" *Winschel*, 631 F.3d at 1178; 20 C.F.R. §§ 404.1520(a)(1)(iv), (e)–(f), 404.1545(a)(5)(i). If the claimant can perform his past work, he is deemed to be not disabled. 20 C.F.R. § 404.1520(a)(1)(iv), (f). But if he cannot perform his past work, the evaluation proceeds to step five, where the burden shifts to the Commissioner to demonstrate the existence of "significant numbers of jobs in the national economy" that the claimant cam perform and that account for his residual capacity, age, education, and work experience. If the Commissioner can make such a showing, the claimant is considered to be not disabled; if the Commissioner cannot make such a showing, the claimant is considered to be disabled and entitled to benefits. *Winschel*, 631 F.3d at 1178; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); 20 C.F.R. §§ 404.1520(a)(1)(v), (g), 404.1545(a)(5)(ii).

7

### C.    The Need to Obtain an Updated Medical Expert Opinion

The parties in the present appeal do not dispute the ALJ's findings that Carpenter did not engage in substantial gainful activity from his alleged disability onset date through his last date of disability benefit insurance or that he suffers from the impairments of degenerative disc disease and generalized anxiety disorder.  Accordingly, our review begins at step three of the five-step, sequential disability evaluation process, as Carpenter contests the ALJ's finding that his impairments do not meet or equal one of the impairments listed in the Social Security Administration regulations.  20 C.F.R. Part 404, Subpart P, App'x 1; 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.

Specifically, Carpenter argues that the ALJ erred by "failing to obtain an updated medical expert opinion regarding medical equivalency[,]" in light of additional evidence submitted after Dr. Clarence Louis, a medical consultant working for the Disability Determination Service (the "medical consultant"), reviewed his file on July 29, 2009.  Carpenter argues that Social Security Ruling 96-6p required the ALJ to obtain an updated medical expert opinion because additional medical evidence—the results from a December 2009 electromyography ("EMG")—was received after the medical consultant gave his July 2009 opinion, and this opinion therefore did not otherwise incorporate all of the medical evidence contained within the record.  Carpenter contends that this new evidence *may* have

indicated to a medical expert that one of the listed impairments was met or equaled.

As noted above, at step three of the five-step sequential evaluation process, the Commissioner considers whether a claimant suffers from a medical condition which meets or equals a "listed impairment." *See* 20 C.F.R. § 404.1520(a)(4)(iii), (d). To prevail, a claimant must provide evidence that his impairment meets all of the criteria in the pertinent regulation listing. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990). Indeed, at this step of the disability inquiry, the burden of proof remains squarely on Carpenter, and the Commissioner's findings as to whether he carried that burden are conclusive and must be affirmed if supported by substantial evidence, even if those findings are not supported by a preponderance of the evidence in the record. *Moore*, 405 F.3d at 1211; *Crawford*, 363 F.3d at 1158–59; *Martin*, 894 F.2d at 1529; 20 C.F.R. § 416.912(a).

Social Security Ruling 96-6p clarifies the Commissioner's policy on the ALJ's "responsibility for obtaining opinions of physicians . . . regarding equivalence to listings in the Listing of Impairments." SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996). It emphasizes certain "longstanding policies and policy interpretations," including that "an [ALJ] must obtain an updated medical opinion from a medical expert . . . [w]hen additional medical evidence is received that *in the opinion of the [ALJ]* may change the State agency medical or

9

psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." *Id.* at *1, 3–4 (emphasis added).

The plain language of SSR 96-6p thus contradicts Carpenter's argument that the ALJ was required to obtain an updated medical expert opinion merely because new evidence was submitted after the prior medical opinion had been rendered. Instead, SSR 96-6p clearly states that an updated medical opinion is only required *when the ALJ is of the opinion* that the additional medical evidence may change the finding that an impairment is not equivalent to any of those listed in the Social Security Administration regulations. *See id.* Here, the ALJ's decision reflects that the new evidence would not have changed the expert opinion's conclusions. Substantial evidence supports that decision.

The listing from the Social Security Administration regulations that is relevant to Carpenter's impairment is Listing 1.04(A). 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04(A). Listing 1.04(A) provides:

> Disorders of the spine (e.g., . . . degenerative disc disease . . . ), resulting compromise of a nerve root (including the cauda equine) or the spinal cord. With:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

10

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04(A).

While Carpenter undisputedly has a disorder of the spine—degenerative disc disease—the evidence in the record at the time the medical consultant's opinion was obtained did not show that his spinal disorder was accompanied by the requisite nerve root compression.  Carpenter's 2001, 2002, 2004, and June 2009 MRIs all reflect herniated discs and degenerative disc disease, but indicate that the nerves appeared unaffected and that there was no evidence of nerve root impingement.  Accordingly, there was no medically acceptable imaging evidence that Carpenter's condition equaled Listing 1.04(A).  *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00(C)(1) (providing that diagnosis of musculoskeletal impairments should be supported by medically acceptance imaging tests, such as x-ray or MRI).

Likewise, the evidence received after the medical consultant issued his July 2009 opinion does not show that Carpenter's spinal disorder was accompanied by the requisite nerve root compression.  Carpenter's December 2009 EMG reflects only mild "chronic motor fiber loss in L5 nerve root-innervated muscles below the knee," and explicitly states that there was no evidence of active denervation.  Moreover, Carpenter's treatment notes from his pain management specialist reflect that this was not the result of new nerve root compression.  Accordingly, substantial evidence supports the ALJ's determination that the new evidence would not likely have changed the expert's opinion, and thus, SSR 96-6p did not require

11

the ALJ to obtain an updated medical opinion regarding whether Carpenter's

impairment met or equaled an impairment listed in the Social Security

Administration regulations.

**D.    The Weight Accorded to the Opinion of Carpenter's Treating Physician by the ALJ**

Carpenter's appeal next takes us to the intermediary stage following step

three of the Commissioner's disability inquiry and preceding step four, in which

the ALJ determined Carpenter's residual functioning capacity.  In conducting that

evaluation, the ALJ was required to consider "all the relevant evidence" in

Carpenter's case record, including medical evidence and reports from his treating

physicians.  20 C.F.R. § 404.1545(a)(1), (3).  When evaluating such reports, the

ALJ must give "substantial weight" to the opinion of claimant's treating physician

"unless good cause exists for not heeding the treating physician's diagnosis."

*Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991).  We have held that good

cause exists when the:  "(1) treating physician's opinion was not bolstered by the

evidence; (2) evidence supported a contrary finding; or (3) treating physician's

opinion was conclusory or inconsistent with the doctor's own medical records."

*Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004).

Carpenter's case record includes a May 2009 opinion completed by Dr.

Taras Kochno, his physical medicine and rehabilitation specialist, in which Dr.

Kochno opined that Carpenter could not sit for more than one hour during an eight-

hour workday; could not stand or walk for more than two to three hours; and had to lie down for four to five hours in order to relieve the pain arising from his herniated discs. Dr. Kochno further indicated that these limitations had existed since June 2001 and that he had reached this conclusion based on Plaintiff's July 2001 and March 2002 MRIs. The ALJ stated that he gave limited weight to this opinion because it was inconsistent with the medical treatment notes, which decision Carpenter now argues is erroneous and unsupported by substantial evidence.

We disagree. Substantial evidence supports the ALJ's articulation of good cause for rejecting Dr. Kochno's opinion that Carpenter suffered from the above extreme limitations. First, Dr. Kochno's own treatment notes give no indication that Carpenter experienced the level of pain necessary to justify the limitations articulated by Dr. Kochno as to his ability to sit, stand, or walk during the work day. Dr. Kochno's notes from May 2009 reflect that Carpenter's general examination was unremarkable, but that he did have limited lumbar flexibility, with tightness in his lumbar paraspinals and lateral flexors. However, Dr. Kochno's sole recommended treatment was physical therapy. Dr. Kochno's notes further reflect that he had treated Carpenter from August 2003 to September 2004 for the same issues stemming from his back injury, and that Carpenter's past treatment of physical therapy, chiropractic treatment and cortical steroid injections,

13

coupled with bed rest for two months, had led his pain and motor and sensory loss to subside.

Second, other evidence in the record supports the ALJ's determination to give limited weight to Dr. Kochno's opinion. The record documents no treatment for Carpenter's back problems between January 2005 and October 2007. In fact, in October 2007, Carpenter described his health as good with only some small symptoms from his disc problems and stated that he was not undergoing any medical treatments at that time. Treatment notes from Carpenter's pain management specialist reflect that in December 2009, Carpenter declined the recommended medication and indicated that he did not want to proceed with any treatment at that time. He sought no further pain management until August 2010.

What's more, Dr. Kochno's opinion was somewhat at odds with Carpenter's own description, in February 2009, to another physician, of his daily activities: that is, Carpenter stated that he cooked three times per week, cleaned two or three times, did laundry two or three times, went shopping once or twice, and provided childcare daily. Accordingly, the ALJ had good cause to discount Dr. Kuchno's opinion in determining whether Carpenter was disabled.

### E.    The Completeness of the Hypothetical Posed to the Vocational Expert

Finally, step five of the disability inquiry requires the Commissioner to demonstrate the existence of "significant numbers of jobs in the national economy"

14

that the claimant can perform and that account for his residual functional capacity, age, education, and work experience. *Winschel*, 631 F.3d at 1178; *Jones*, 190 F.3d at 1228; 20 C.F.R. §§ 404.1520(a)(1)(v), (g), 404.1545(a)(5)(ii). To do so, an ALJ may rely solely on the testimony of a vocational expert to whom he poses a hypothetical question that comprises all of the claimant's impairments, including those relating to the claimant's concentration, persistence, and pace. *Winschel*, 631 F.3d at 1180; *Jones*, 190 F.3d at 1229–30.

On appeal, Carpenter argues the ALJ failed to include all of his limitations in the hypothetical question posed to the vocational expert. Specifically, Carpenter contends that the ALJ did not include (1) Dr. Kochno's limitation that he was required to rest four to five hours a day to relieve his pain or (2) the moderate limitations in concentration, persistence, and pace, found by the ALJ. Again, we disagree.

The ALJ was not required to include Dr. Kochno's findings in the hypothetical question posed to the vocational expert because the ALJ had already determined that those findings were unsupported by the medical evidence. *See Crawford*, 363 F.3d at 1161 (holding that an ALJ is not required to include limitations in a hypothetical that are unsupported by the medical evidence).

As for the concentration, persistence, or pace limitations, the ALJ found, based on the evidence, that Carpenter had "at most moderate difficulties with

15

regard to concentration, persistence, or pace." The ALJ qualified that finding by pointing out that a psychiatrist had diagnosed Carpenter with generalized anxiety disorder, insomnia, and depression, and had prescribed Valium and Lexapro to Carpenter. The ALJ went on to conclude that Carpenter was capable of performing at least simple, unskilled, routine, and repetitive tasks. The ALJ then incorporated this limitation in his hypothetical question to the vocational expert by specifying that the hypothetical individual was "capable of performing at least simple unskilled, routine, and repetitive tasks, one- to three-step instructions."

We have observed that "when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." *Winschel*, 631 F.3d at 1180. Accordingly, the hypothetical question posed by the ALJ to the vocational expert adequately accounted for Carpenter's mental limitations. *See Winschel*, 631 F.3d at 1180.

## III.  CONCLUSION

For the above reasons, we conclude that the Commissioner did not err in denying Carpenter's application for disability insurance benefits.

**AFFIRMED.**

16