[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12126
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cv-00006-MP-GRJ


SAMANTHA SCHRADER,

Plaintiff–Appellant,

versus

ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

Defendant–Appellee.


_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(December 23, 2015)

Before WILSON, ROSENBAUM, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Appellant Samantha Schrader appeals the district court's order affirming the Administrative Law Judge's ("ALJ") denial of her application for supplemental security income.  She argues that substantial evidence did not support the ALJ's determination that she did not meet the criteria for establishing an intellectual disability, as set out in 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C).[1]  After careful review, we affirm.

## I.  BACKGROUND

In September 2010, Schrader filed an application for supplemental security income with the Social Security Administration.  Alleging a disability onset date of September 1, 1995, Schrader represented that she was disabled and unable to work because she had a speech and learning disability, one kidney, a stomach ulcer, and an enlarged spleen.  According to Schrader's mother, Sharon Schrader ("Sharon"), Schrader's mental impairments made it difficult for her to keep up in school.  Schrader also needed to be reminded to change her socks, take her medication, and to help out with chores around the house.

---

[1]  The parties use the term "mental retardation" when referring to § 12.05 of the listing of impairments, due to the fact that the regulations in effect at the time of the ALJ's decision used the term "mental retardation."  In 2013, the Social Security Administration amended § 12.05 by substituting the term "intellectual disability" for "mental retardation."  *Compare* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05(C) (2013), *with id.* (2012).  Because the Social Security Administration indicated that the replacement of the term "does not affect the actual medical definition of the disorder or available programs and services," this opinion uses "intellectual disability" to refer to § 12.05.  *See* 78 Fed.Reg. 46,499, 46,500 (2013).

2

The Commissioner of Social Security ("the Commissioner") denied Schrader's application for benefits.  At a subsequent hearing before the ALJ in June 2012, the ALJ heard testimony from Schrader, Sharon, and a vocational expert.  At the outset of the hearing, Schrader's attorney stated that the record evidence established that Schrader met the criteria for intellectual disability under § 12.05(C) of the listing of impairments.

Schrader testified that she graduated high school, but had participated in special education classes.  She was able to drive, and in fact, she had driven her nephews to a baseball game and picked her mother up at work before coming to the hearing.  Schrader worked one day per week at a laundromat where she washed, dried, and folded clothing.  The reason she only worked one day per week was because her work was dependent upon how many drop-offs the laundromat received.  Schrader's mother, who also worked at the laundromat, provided Schrader with her wages every Friday.  Schrader had a checking account, and she used the account to save some of the money she earned at the laundromat.

Schrader further stated that she spends her days sleeping in, watching television, and "chill[ing]" with friends.  On occasion, she also babysits her nephews for her sister.  She receives food stamps and uses the money she earns working at the laundromat to pay for gas and cigarettes.  Schrader's responsibilities around the house included doing the dishes, dumping ice, making tea, burning

3

trash, and sometimes feeding the dog.  She had taken six classes to become a day care worker, but she was struggling to pass all six of the certification tests.

Schrader believed she could work at the laundromat every day if there was enough work, but she did not want to because "it gets tiring" folding clothes. When she receives multiple clothing drop-offs, she has to remind herself not to mix-up the clothing.  She believed she was capable of performing the responsibilities of a ticket-taker at a movie theater.   She also had tried to obtain a job at the grocery store and fast food restaurants in her town, but none of those places were hiring.

Schrader's mother, Sharon, testified that Schrader worked at the laundromat on Sharon's days off.   Because Schrader could not count change, Sharon had a paper taped to the wall that told Schrader how much money to charge customers depending on the weight of the clothing.  Sharon further stated that Schrader's problems started when she was three; she was in speech therapy for a long time; she did not read on her reading level; she could not follow a recipe because she could not remember measurements; and she had memory problems and would forget appointments. Sharon did not believe that Schrader could work at the laundromat eight hours per day or take tickets at a movie theater because she would get tired of standing and would lose focus.  However, Sharon acknowledged

that Schrader had been helping take care of her nephews, and Sharon viewed Schrader as capable of driving and of going to see friends without supervision.

Following the hearing, the ALJ issued a decision, concluding that Schrader was not disabled for purposes of eligibility for supplemental security income. Upon review of the evidence, the ALJ found that Schrader suffered from borderline intellectual functioning. However, the ALJ determined that this impairment did not meet or equal any of the listed impairments in the Social Security Administration regulations because Schrader only had mild difficulties in activities of daily living and social functioning, moderate difficulty with respect to concentration, persistence, or pace, and no episodes of decompensation.

The ALJ further concluded that Schrader could perform light work, but that she needed to avoid heights—including climbing ropes, ladders, or scaffolds—speaking to crowds, and operating heavy machinery. The ALJ also noted that her work should be limited to activities that require only two steps at most, and should not involve reading above a fourth grade level. Assessing Schrader's adaptive functional capacity under § 12.05(C), the ALJ stated that she had no problems taking care of her personal needs. Moreover, Schrader's abilities were far beyond both her and her mother's assertions that she could not function on a job. Based on this finding, in addition to the vocational expert's opinion that a significant number of jobs accommodating Schrader's limitations existed in the national economy, the

ALJ concluded that Schrader was not disabled.  The Appeals Council denied Schrader's request for review.

In January 2014, Schrader filed a complaint in the district court challenging the denial of supplemental security income.  She argued that substantial evidence demonstrated that she met the requirements for § 12.05(C) on intellectual disability because she had an intelligence quotient ("I.Q.") below 70 and deficits in adaptive functioning.

A magistrate judge issued a report and recommendation ("R&R"), recommending that the denial of supplemental security income be affirmed.  The magistrate judge concluded that the ALJ did not err in concluding that Schrader failed to meet the criteria for § 12.05(C) because she did not have deficits in adaptive functioning.  Over Schrader's objections, the district court adopted the R&R and affirmed the Commissioner's decision denying benefits.  This appeal followed.

## II.  DISCUSSION

We review the ALJ's decision for substantial evidence, but its application of legal principles *de novo.  Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)

6

(quotations omitted).  We may not reweigh the evidence and decide the facts anew, and must defer to the ALJ's decision if it is supported by substantial evidence.  *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

To be eligible for supplemental security income, a claimant must be under a disability.  42 U.S.C. § 1382(a)(1), (2); 20 C.F.R. 416.912.  In determining whether a claimant has proven that she is disabled, the ALJ must complete a five-step sequential evaluation process.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).  The claimant has the burden to prove that (1) she "has not engaged in substantial gainful activity," (2) she "has a severe impairment or combination of impairments," and (3) "her impairments or combination of impairments meets or equals a listed impairment" such that she is entitled to an automatic finding of disability.  *Id.*  To establish that an impairment meets or equals a listed impairment under step three, a claimant must have a diagnosis included in the listing of impairments and must provide medical reports documenting that her condition meets the specific criteria of the listed impairment.  *See Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002); 20 C.F.R. § 416.925(a)-(d).

If the claimant is not able to meet or equal the criteria for a listed impairment, she must proceed to the fourth step, which requires showing that she is unable to do her past relevant work.  *Jones*, 190 F.3d at 1228.  "At the fifth step, the burden shifts to the Commissioner to determine if there is other work available

in significant numbers in the national economy that the claimant is able to perform." *Id.* If the Commissioner demonstrates that there are jobs that the claimant can perform, the claimant must show that she is unable to perform those jobs in order to establish that she is disabled. *Id.*

At issue in the present case is whether Schrader meets the requirements for intellectual disability under § 12.05(C) in the listing of impairments and, more specifically, whether Schrader has the necessary deficits in adaptive functioning. To establish an intellectual disability under § 12.05(C), a claimant must meet the diagnostic criteria in § 12.05's introductory paragraph, in addition to the specific severity requirements in one of the subparagraphs, A through D. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.00(A), 12.05. The introductory paragraph requires that the claimant have (1) a "significantly subaverage general intellectual functioning," (2) with deficits in "adaptive functioning," (3) that manifested before age 22. *Id.* §§ 12.00A, 12.05. Schrader alleges that she meets the criteria for subparagraph C, which requires: a "valid verbal, performance, or full scale IQ of 60 through 70"; and "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *See id.* § 12.05(C).

Substantial evidence supports the ALJ's findings at step three of the sequential process that Schrader did not meet the requirements for establishing an intellectual disability under § 12.05(C). The ALJ acknowledged that Schrader had

8

a low I.Q.,[2] but determined that she did not have the deficits in adaptive functioning necessary to meet § 12.05(C).

While Schrader is correct that the Social Security Regulations do not define the term adaptive functioning, the Social Security Administration's Program Operations Manual System ("POMS") provides a definition for "adaptive functioning" in the disability context. *See Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 385 (2003) (explaining that the POMS is an administrative interpretation, which, although not the product of formal rulemaking, has been promulgated by the Social Security Administration as "publicly available operating instructions for processing Social Security claims"). According to the POMS, adaptive functioning refers "to the individual's progress in acquiring mental, academic, social and personal skills as compared with other unimpaired individuals of his/her same age."[3] Soc. Sec. Admin., *Program Operations Manual System*, DI 24515.056(D)(2) (2012).[4]

---

[2] Schrader's full scale I.Q. score was 67 on the Wechsler Adult Intelligence Scale. *See* 20 C.F.R. Pt. 404, Subpt. P, App 1 § 12.00(D)(6)(c) (stating that for purposes of § 12.05, the ALJ uses the lowest score of the verbal, performance, and full scale I.Q. scores provided in the Wechsler series).

[3] Similarly, the Diagnostic Statistical Manual of Mental Disorders states that adaptive functioning refers "to how well a person meets standards of personal independence and social responsibility, in comparison to others of similar age and sociocultural background. Adaptive functioning involves adaptive reasoning in three domains: conceptual, social, and practical." AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 37 (5th ed. 2013).

[4] The POMS is available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0424515056.

Moreover, although Schrader contends that the regulations should more clearly define adaptive functioning or require an objective test to evaluate adaptive behavior, the authority to amend the rules and regulations governing the supplemental security income program lies solely with the Commissioner. *See* 42 U.S.C. § 405(a) (providing that "[t]he Commissioner of Social Security shall have full power and authority to make rules and regulations and to establish procedures" in disability cases); *cf. Heckler v. Campbell*, 461 U.S. 458, 466 (1983) ("Congress has conferred on the [Commissioner] exceptionally broad authority to prescribe standards for applying certain sections of the [Social Security] Act." (quotations omitted) (second alteration in original)).

The record supports the ALJ's finding that the required limitations in adaptive functioning were not present, despite Schrader's low I.Q. score. Though Schrader attended special education classes, she graduated high school with a regular diploma and had taken vocational classes to become a daycare worker. She was able to groom herself, cook simple meals, perform household chores, drive, watch television, and babysit her nephews without any assistance from others. Schrader also worked part-time at the laundromat, and the reason she did not work more was because there was not enough work, not because of her disability.

Although one of the doctors who evaluated Schrader opined that she could not manage her own finances, this was contradicted by another physician who

10

found that she was capable of managing her own finances. Likewise, Schrader testified that her mother gave her the wages she earned from the laundromat, and that she deposited the money she did not spend on gas and cigarettes into her checking account. She also had a debit card. Furthermore, the doctors who evaluated Schrader concluded that, despite her low I.Q. score and speech impediment, she was able to engage in conversation, effectively communicate, and could perform routine, simple tasks. In fact, Schrader testified that she believed she could perform the job of a ticket-taker at the movie theater, and she had applied for jobs at the grocery store and fast food restaurants in her town, but none of them were hiring. As noted by the ALJ, the record evidence demonstrated that Schrader's abilities far exceeded her and her mother's testimony regarding her inability to work. In sum, substantial evidence supports the ALJ's finding that Schrader did not meet the criteria for intellectual disability as set out in §12.05(C) because she did not have the requisite deficits in adaptive functioning.

## III. CONCLUSION

For all of the above reasons, we affirm the district court's order affirming the Commissioner's denial of Schrader's application for supplemental security income.

**AFFIRMED.**

11