[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-11089
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cv-21698-CMA

MICHAEL ROBERT TEIGEN,

                                        Plaintiff-Appellant,

versus

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(January 24, 2017)

Before MARTIN, JULIE CARNES, and ANDERSON, Circuit Judges.

PER CURIAM:

Appellant Michael Teigen, proceeding *pro se*, appeals the district court's order affirming the Administrative Law Judge's ("ALJ") denial of his applications for disability insurance benefits and supplemental security income. On appeal, he argues that substantial evidence did not support the ALJ's finding that his visual impairment, HIV infection, and mental impairment did not meet the listed criteria for establishing a disability, 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 2.02, 2.03, 12.02, 14.08. After careful review, we affirm.

I.    **BACKGROUND**

In 2012, Teigen filed an application for disability insurance benefits and supplemental security income with the Social Security Administration. Alleging a disability onset date of April 1, 2010, Teigen represented that he was disabled and unable to work because he suffered from HIV and blindness in his right eye. The record shows that, in September 2010, Teigen underwent surgery on his right eye to correct a rhegmatogenous retinal detachment. Teigen was diagnosed with HIV one month later in October 2010.

The Commissioner of Social Security ("the Commissioner") denied Teigen's applications for benefits. At a subsequent hearing before the ALJ on October 16, 2014, the ALJ heard testimony from Teigen, a medical expert, and a vocational expert. Teigen testified that he had been enrolled in a paralegal program since 2011 and expected to graduate in May or June 2015. He did not know, however, if

2

he would be able to obtain employment as a paralegal because of his vision.  He had been able to get through school with a lot of assistance, including a document reader.  He explained that he did not have vision in his right eye and a recent exam indicated that the vision in his left eye was 20/-30.  He did not drive and relied on public transportation.  Most recently, he worked as a server at the Ritz Carlton.  He left that job in March 2010 when he moved to Miami.  He had also previously worked as an office administrator.

The medical expert, Dr. Lee Besen, testified that Teigen had the following impairments:  asymptomatic HIV; drug and alcohol abuse; and a detached retina in his right eye.  While Teigen's right eye impairment was his primary issue, the vision in his left eye was better than 20/200 and therefore did not meet the listing criteria for a visual impairment under § 2.02.  Teigen also did not meet the listing criteria for § 2.03.  Dr. Besen explained that, based on the medical records presented, Teigen suffered only "mild limitations" and was "quite functional."

Following the hearing, the ALJ issued a decision, concluding that Teigen was not disabled for purposes of eligibility for disability insurance benefits or supplemental security income.  Specifically, upon review of the record evidence, the ALJ determined that Teigen suffered from asymptomatic HIV infection and status post-surgery for retinal detachment in the right eye with vision loss in right eye, but that these impairments did not meet or equal any of the listed impairments

3

in the Social Security Administration regulations.  The ALJ further determined that Teigen could perform light work with restrictions on activities such as avoiding ramps, stairs, ladders, scaffolds, workplace hazards and working with exposure to unprotected heights.  The ALJ further determined that Teigen should not operate a motor vehicle and would need magnification for reading.  Based on this finding, coupled with the vocational expert's opinion that a hypothetical individual with Teigen's limitations could perform the job of a receptionist, the ALJ determined that Teigen could perform his past relevant work as a receptionist.  Accordingly, the ALJ determined that Teigen was not disabled.

Following the ALJ's decision, Teigen requested review from the Appeals Council and submitted additional evidence, including medical records from an examination by Dr. Weiner Bastien in March 2015.  These records indicated that Teigen had tunnel vision in his left eye and near total impairment in his right eye. Dr. Bastien also noted that Teigen had "severely constricted fields in [left eye]" and "15° maximum diameter."  The Appeals Council denied Teigen's request for review, stating that it had "considered the reasons [Teigen] disagree[d] with the decision and the additional evidence listed on the enclosed Order of Appeals Council."

In May 2015, Teigen filed a *pro se* complaint in the district court challenging the denial of disability insurance benefits and supplemental security

income.  He stated that he suffered from asymptomatic HIV, and appeared to argue that his visual impairment met the listing criteria under §§ 2.02 and 2.03.

A magistrate judge issued a report and recommendation (R&R), recommending that the denial of disability insurance benefits and supplemental security income be affirmed.  The magistrate judge indicated that Teigen arguably abandoned his claims related to his HIV infection and vision impairments by not providing sufficient argument as to these issues.  Nevertheless, the magistrate judge addressed these issues because Teigen was proceeding *pro se*, and ultimately concluded that substantial evidence supported the ALJ's conclusion that Teigen was not disabled due to either of the aforementioned impairments.

Teigen objected to the magistrate judge's R&R, stating that his restricted vision and HIV infection rendered him disabled.  Over Teigen's objections, the district court adopted the R&R and affirmed the Commissioner's decision denying benefits.  This appeal followed.

## II.   DISCUSSION

Teigen argues that substantial evidence does not support the ALJ's determination that his visual impairment, HIV infection, and mental impairment did not meet or equal any of the listed criteria for establishing a disability.

5

### A.    Standard of Review

We review the ALJ's decision for substantial evidence, but its application of legal principles *de novo*.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quotations omitted).  We may not reweigh the evidence and decide the facts anew, and must defer to the ALJ's decision if it is supported by substantial evidence.  *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

### B.    Process for Determining Eligibility for Disability Insurance Benefits and Supplemental Security Income

To be eligible for supplemental security income, a claimant must be under a disability.  42 U.S.C. § 1382(a)(1), (2); 20 C.F.R. § 416.912.  To establish eligibility for disability insurance benefits further requires the claimant to show that he was under disability on or before the last date for which he was insured.  42 U.S.C. § 423(a)(1)(A), (c)(1); *Moore*, 405 F.3d at 1211.

In determining whether a claimant has proven that he is disabled, the ALJ must complete a five-step sequential evaluation process.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).  The claimant has the burden to prove that (1) he "has not engaged in substantial gainful activity," (2) he "has a severe impairment or combination of impairments," and (3) "[his] impairments or combination of

6

impairments meets or equals a listed impairment" such that he is entitled to an automatic finding of disability. *Id.* To establish that an impairment meets or equals a listed impairment under step three, a claimant must have a diagnosis included in the listing of impairments and must provide medical reports documenting that his condition meets the specific criteria of the listed impairment. *See Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002); 20 C.F.R. § 416.925(a)-(d). "An impairment that manifests only some of [the] criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (11th Cir. 1990).

If the claimant is not able to meet or equal the criteria for a listed impairment, he must proceed to the fourth step, which requires showing that he is unable to do his past relevant work. *Jones*, 190 F.3d at 1228. "At the fifth step, the burden shifts to the Commissioner to determine if there is other work available in significant numbers in the national economy that the claimant is able to perform." *Id.* If the Commissioner demonstrates that there are jobs that the claimant can perform, the claimant must show that he is unable to perform those jobs in order to establish that he is disabled. *Id.*

**C.    Visual Impairment**

Teigen asserts that his visual impairment meets the listed criteria for establishing disability under §§ 2.02 or 2.03. He further argues that he meets the

definition of statutory blindness because the vision in his left eye is 20/-30 and the vision in his right eye is 20/HM.

To establish disability with respect to visual acuity listed under § 2.02, a claimant must show that the "[r]emaining vision in the better eye after best correction is 20/200 or less." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 2.02. Section 2.03 in turn provides that a claimant can establish contraction of the visual field in the better eye by showing that: (1) the "widest diameter subtending an angle around the point of fixation no greater than 20 degrees"; (2) an "MD [mean deviation] of 22 decibels or greater, determined by automated static threshold perimetry that measures the central 30 degrees of the visual field"; or (3) a "visual field efficiency of 20 percent or less, determined by kinetic perimetry." *Id.* Pt. 404, Subpt. P, App. 1 § 2.03.

Substantial evidence supports the ALJ's findings at step three of the sequential process that Teigen did not meet the requirements for establishing a disability under §§ 2.02 or 2.03. As to Teigen's visual acuity under § 2.02, there was no evidence in the record showing that the vision in his better eye—his left eye—was less than 20/200. In fact, Teigen testified at the hearing that the vision in his left eye was 20/-30. An eye examination in February 2014 likewise showed that the vision in Teigen's left eye was 20/-30. An examination in November 2014, one month after the administrative hearing, showed that the vision in

Teigen's left eye was 20/40 with PH 20/-30 and that the optic nerve in his left eye "looked fine." Additionally, Dr. Besen testified that Teigen's vision in his left eye was better than 20/200.

As to establishing the criteria for the listed impairment under § 2.03, the November 2014 eye examination revealed that Teigen's left eye had a mean deviation of -15.31, as well as hemianopsia,[1] or defective vision in half of the visual field. These examination results clearly show that Teigen does not meet or equal the requirement of having 20% or less visual field angle or a mean deviation of 22 or greater. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 2.03. What's more is that Dr. Besen testified that Teigen did not meet the criteria for the listed impairment under § 2.03, and further stated that Teigen had minimal restrictions and was "quite functional."

Teigen's argument that Dr. Weiner Bastien's examination in March 2015 proves that he is disabled is unavailing.[2] Dr. Bastien examined Teigen in March 2015—after the ALJ issued her decision—and noted that Teigen's CAT scan was

---

[1] Hemianopsia is defined as defective vision in half of the visual field. "Hemianopsia," http://medical-dictionary.thefreedictionary.com/hemianopsia (last visited December 7, 2016).

[2] Because Teigen does not challenge the Appeal Council's review of this evidence or request a remand based on Dr. Bastien's examination, he has abandoned any such argument. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680–81 (11th Cir. 2014) (explaining that a party abandons an argument on appeal by failing to challenge an issue in his appellate brief). Teigen also does not expressly challenge the ALJ's other findings related to his eye condition, such as the finding at step four of the sequential process that Teigen could perform his past relevant work as a receptionist. Thus, he has abandoned this argument as well. *See id.*

normal and that he needed an MRI of his brain. Dr. Bastien also diagnosed Teigen with tunnel vision in his left eye with a 15-degree maximum diameter. Although a claimant is generally permitted to present new evidence throughout the administrative process, the evidence must be new, material, and must relate back to the time period on or before the date of the ALJ's decision. *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015); 20 C.F.R. §§ 404.970(b); 416.1470(b). Dr. Bastein's examination did not make a diagnosis showing that Teigen suffered from a condition before the date of the ALJ's decision on December 17, 2014. Instead, Dr. Bastien made a diagnosis concerning Teigen's condition in March 2015, nearly four months after the ALJ's decision. Dr. Bastein's examination does not reference any of Teigen's prior medical records, and does not provide any confirmation that it related to the time period under consideration. Even if Dr. Bastein's examination shows that the condition in Teigen's left eye had worsened, this subsequent deterioration does not make the records chronologically relevant. *Cf. Washington*, 806 F.3d at 1322–23 (concluding that a medical opinion rendered after the ALJ's decision was chronologically relevant in part because the physician reviewed claimant's medical records from period before the ALJ's decision and there was no contention that the claimant's condition had deteriorated since the date of the ALJ's decision); *see also Wilson v. Apfel*, 179 F.3d 1276, 1278–79 (11th Cir. 1999) (explaining that a

medical opinion rendered one year after the ALJ's decision, while applicable to determining whether the subsequent worsening of claimant's medical condition may have entitled her to benefits, was not relevant to the ALJ's disability determination for the period prior to the decision).  Accordingly, the ALJ's finding that Teigen did not meet the criteria for establishing a visual disability under § 2.02 and § 2.03 is supported by substantial evidence.

## D.    HIV Condition

Teigen next asserts that his HIV infection meets the requirements for disability under § 14.08.  To establish a disability based on HIV, Teigen must present proper documentation showing an HIV diagnosis, as well as one of the following:  bacterial infection; fungal infection; protozoan or helminthic infection; viral infection; malignant neoplasm; conditions of the skin or mucous membranes; HIV encephalopathy; HIV wasting syndrome; diarrhea; or repeated manifestation of HIV infection.  20 C.F.R. Part 404, Subpt P, App. 1 § 14.08.

There is no dispute that Teigen has documentation showing that he has been diagnosed with HIV.  Teigen's claim appears to be based on repeated manifestations of HIV infection under § 14.08(K).  Section 14.08(K) provides the following:

> Repeated (as defined in 14.00I3) manifestations of HIV infection, including those listed in 14.08A–J, but without the requisite findings for those listings . . . or other manifestations . . . resulting in

significant, documented symptoms or signs . . . and one of the following at the marked level:

> 1. Limitation of activities of daily living.

> 2. Limitation in maintaining social functioning.

> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Part 404, Subpt P, App. 1 § 14.08(K).

Here, substantial evidence supports the ALJ's implicit finding that Teigen's HIV condition did not meet or equal the listed criteria under § 14.08(K). The medical record shows that following Teigen's HIV diagnosis in October 2010, he was asymptomatic, consistently had a low viral load, and high CD4 cells. Moreover, in the years following his diagnosis, Teigen was not required to take anti-viral medication. Dr. Besen also testified that Teigen suffered "minimal symptoms" related to his HIV diagnosis.

What's more is that the record does not contain any evidence showing that Teigen has marked limitations in activities of daily living, maintaining social functioning, or completing tasks in a timely manner. 20 C.F.R. Part 404, Subpt P, App. 1 § 14.08(K). In a March 2012 report, Teigen stated that he lives alone, cooks for himself, has no difficulty caring for himself, cleans the apartment, manages his finances, attends college, and takes public transportation. Teigen also

reiterated at the administrative hearing that he lives in an apartment, takes public transportation, and is studying to become a paralegal. In short, substantial evidence supports the ALJ's finding that Teigen failed to establish that his HIV infection meets the listed criteria under § 14.08.

### E.    Mental Impairment

Teigen argues for the first time on appeal that his schizotypal personality disorder and learning disabilities meet the listed criteria for a mental disorder under § 12.00. The Commissioner asserts that Teigen waived this argument by failing to raise it before the district court. We agree.

Generally, "[we] will not address an argument that has not been raised in the district court." *Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115 (11th Cir. 1994); *see also Jones*, 190 F.3d at 1228 (declining to review a social security claimant's argument raised for the first time on appeal). Before the district court, Teigen focused on his eye impairment and HIV infection and mentioned in a perfunctory manner that he did not waive any issue related to his "combined medical and mental health issues." Aside from this conclusory statement, Teigen did not mention his personality disorder diagnosis or argue that he met the criteria for a mental disorder under § 12.00. Because Teigen did not sufficiently raise any argument

13

before the district court related to his mental impairment or the listed criteria under § 12.00, we conclude that Teigen has waived this issue and we decline to consider it.

## III.  CONCLUSION

For all of the above reasons, we affirm the district court's order affirming the Commissioner's denial of Teigen's application for disability insurance benefits and supplemental security income.

**AFFIRMED.**