**Betty MIJENES, Plaintiff-Appellant,**

v.

**COMMISSIONER OF SOCIAL SECURITY, Defendant-Appellee.**

No. 16-11998
Non-Argument Calendar

United States Court of Appeals, Eleventh Circuit.

(May 3, 2017)

---

Rogelio R. Oliver, Law Office of Rogelio R. Oliver, Coral Gables, FL, Katherine Olivia Palacios-Paredes, Palacios Disability, PA, Miami, FL, for Plaintiff-Appellant

Ashley M. Johnson, Timothy Stevens, Jerome M. Albanese, William Lawrence Hogan, Depak Sathy, Mary Ann Sloan, John C. Stoner, Social Security Administration, Office of the General Counsel, Atlanta, GA, Wifredo A. Ferrer, Emily M. Smachetti, Karin Dorothy Wherry, U.S. Attorney's Office, Miami, FL, for Defendant-Appellee

Before MARCUS, JULIE CARNES, and FAY, Circuit Judges.

PER CURIAM:

Claimant Betty Mijenes appeals the district court's order affirming the Administrative Law Judge's ("ALJ") denial of her application for supplemental security income. On appeal, Mijenes argues that the ALJ's residual functional capacity assessment is not supported by substantial evidence. She also challenges the ALJ's determination that she could perform her past relevant work, as well as the weight the ALJ assigned to the medical opinion evidence. Finally, she asserts that substantial evidence does not support the ALJ's

credibility determination. After careful review, we affirm.

## I. BACKGROUND

In 2011, Mijenes filed an application for supplemental security income with the Social Security Administration. Alleging a disability onset date of July 30, 2010, Mijenes represented that she was disabled and unable to work due to mental impairments. The Commissioner of Social Security denied Mijenes's application for benefits on initial review and upon reconsideration.

At a subsequent hearing before an ALJ, Mijenes testified that her previous jobs included working in a shipping and receiving factory, selling flowers, and cleaning houses. She stopped working because she suffers from depression, bipolar disorder, and panic attacks. She has been hospitalized for depression and attempting suicide. She stated that she lives with her daughters, who are ages 20 and 2, and that her older daughter often does the household chores and takes care of the younger child.

Following the hearing, the ALJ issued a decision concluding that Mijenes was not disabled for purposes of supplemental security income. Upon review of the record evidence, the ALJ determined that Mijenes suffered from depression, anxiety, and personality disorder, but that these impairments did not meet or equal any of the listed impairments in the Social Security regulations. The ALJ explained that Mijenes had mild restrictions in the activities of daily living and social functioning, moderate difficulties in concentration, persistence, and pace, and no episodes of decompensation.

The ALJ further determined that Mijenes had the residual functional capacity to perform the full range of work with some non-exertional limitations. In fact, her mental capabilities included at the very least: understanding simple directions; making judgments and simple decisions pertaining to unskilled work; responding appropriately to supervisors; and adapting to changes in a routine work environment. Based on that finding, the ALJ concluded that Mijenes could perform her past relevant work as a housekeeper. Accordingly, the ALJ determined that Mijenes was not disabled. The Appeals Council denied Mijenes's request for review.

Mijenes then filed a complaint in district court challenging the denial of supplemental security income. She argued that substantial evidence did not support the ALJ's assessment of her residual functional capacity or the determination that she could perform her past relevant work. She also challenged the ALJ's assessment of the medical opinion evidence and the credibility determination.

A magistrate judge issued a report and recommendation ("R & R"), recommending that the denial of supplemental security income be affirmed. Over Mijenes's objections, the district court adopted the R & R. This appeal followed.

## II. DISCUSSION

### A. Standard of Review

We review the ALJ's decision for substantial evidence, but its application of legal principles *de novo. Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quotations omitted). We may not reweigh the evidence and decide the facts anew, and must defer to the ALJ's decision if it is supported by substantial evidence. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

## B. Process for Determining Eligibility for Supplemental Security Income

To be eligible for supplemental security income, a claimant must be under a disability. 42 U.S.C. § 1382(a)(1), (2); 20 C.F.R. § 416.912. In determining whether a claimant has proven that she is disabled, the ALJ must complete a five-step sequential evaluation process. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The claimant has the burden to prove that (1) she "has not engaged in substantial gainful activity," (2) she "has a severe impairment or combination of impairments," and .(3) "[her] impairment or combination of impairments meets or equals a listed impairment," such that she is entitled to an automatic finding of disability. *Id.* To establish that an impairment meets or equals a listed impairment under step three, a claimant must have a diagnosis included in the listing of impairments and must provide medical reports documenting that her condition meets the specific criteria of the listed impairment. *See Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002); 20 C.F.R. § 416.925(a)-(d). "An impairment that manifests only some of [the] criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990).

If the claimant is not able to meet or equal the criteria for a listed impairment, she must proceed to the fourth step, which requires the ALJ to assess the claimant's residual functional capacity and determine whether she is able to return to her past relevant work. *Jones*, 190 F.3d at 1228; *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). "At the fifth step, the burden shifts to the Commissioner to determine if there is other work available in significant numbers in the national economy that the claimant is able to perform." *Jones*, 190 F.3d at 1228. If the Commis-sioner demonstrates that there are jobs that the claimant can perform, the claimant must show that she is unable to perform those jobs in order to establish that she is disabled. *Id.*

## C. Residual Functional Capacity

■ Mijenes argues that substantial evidence does not support the ALJ's determination that she had the residual functional capacity to perform the full range of unskilled work with some non-exertional limitations.

"Residual functional capacity," (hereinafter referred to as functional capacity) is defined as "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). This determination is based on "all of the relevant medical and other evidence." *Id.* § 416.945(a)(3). The claimant's functional capacity is used to gauge whether the claimant can do past relevant work. *See Phillips*, 357 F.3d at 1238.

At step four of the sequential evaluation process, the ALJ determined that Mijenes had the functional capacity to perform a full range of unskilled work at all exertional levels with some non-exertional limitations. The ALJ determined that Mijenes retained the mental capacity to, at a minimum: carry out simple instructions; make work-related decisions related to unskilled work; respond appropriately to supervisors; and adapt to changes in a routine work environment. Comparing Mijenes's functional capacity with the physical and mental demands of her past work experience as a housekeeper, the ALJ determined that Mijenes could perform her past relevant work.

Substantial evidence supports the ALJ's determination that Mijenes had the functional capacity to work at all exertional levels with non-exertional limitations related to understanding, remembering, and

carrying out instructions. As shown by the medical record, Mijenes had received mostly outpatient treatment for her bipolar and affective mood disorders. Though she was admitted to the hospital for a 24-hour psychiatric evaluation in 2011, she presented with normal thought content and processes. Further, neither of her treating psychiatrists, Drs. Diana De La Vega and Fernando Gonzalez, indicated that she had delusions or suicidal ideations. In fact, both doctors consistently stated that Mijenes appeared to be well at her appointments, in some instances noting that she was alert, coherent, goal-oriented, and had fair insight and judgment. Moreover, Mijenes's elder daughter reported that although she assisted her mother with various activities, her mother could complete and manage most household responsibilities, including cooking, doing laundry, driving short distances, paying household bills, and carrying for her younger daughter.

We are not persuaded by Mijenes's argument that the ALJ's functional capacity determination does not account for the ALJ's finding that she was moderately limited in the areas of concentration, persistence, and pace. Because the medical evidence showed that Mijenes could perform simple, routine tasks despite her limitations in concentration, persistence, and pace, the ALJ's limiting of Mijenes's functional capacity to unskilled work sufficiently accounted for her moderate difficulties in concentration, persistence, and pace. *Cf. Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) ("But when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace,

courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations.").

Finally, Mijenes's contention that the ALJ erred by relying entirely on Mijenes's daughter's report concerning Mijenes's daily activities is without merit. The record shows that in addition to Mijenes's daughter's report, the ALJ based his decision on a review of the entire medical record, including the findings of Mijenes's treating physicians, the opinions of the state agency medical consultants, her psychiatric evaluation, and her own testimony. In short, the ALJ's determination regarding Mijenes's functional capacity was supported by substantial evidence.[1]

## D.  Past Relevant Work

■ Mijenes takes issue with the ALJ's determination that her former job as a housekeeper qualifies as past relevant work. Past relevant work is defined as work that a claimant has done in the past 15 years and that was substantial gainful activity. 20 C.F.R. § 416.960(b)(1). The claimant bears the burden of demonstrating that she cannot return to her past relevant work. *Moore*, 405 F.3d at 1211. The determination of whether work constitutes substantial gainful activity typically requires an evaluation of the claimant's earnings. 20 C.F.R. § 416.974(b)(2). The monthly earnings amounts deemed to constitute substantial gainful activity for purposes of determining a claimant's past relevant work are: (a) $810 for the year 2004; (b) $830 for year 2005; (c) $860 for year 2006; (d) $900 for year 2007; (e) $940 for year 2008; (f) $980 for year 2009; and (g) $1000 for year 2010. *See* 20 C.F.R. § 416.974(b)(2)(i); Social Security Adminis-

---

1. Because substantial evidence supports the ALJ's determination at step four of the sequential evaluation process, we do not address Mijenes's argument regarding the ALJ's alternative finding at step five.

tration Programs Operations Manual System, DI 10501.015.

Mijenes contends that her position as a housekeeper was not past relevant work because her earnings were not enough to constitute substantial gainful activity. We disagree. The record shows that Mijenes reported that she was self-employed as a housekeeper from 2004 through 2010 and earned $1,300 per month. The ALJ properly considered Mijenes's work as a housekeeper to be past relevant work because she held the position within the last 15 years and she admitted that she earned more than the amount necessary to constitute substantial gainful activity (which at most was $1,000 per month in 2010). *See* 20 C.F.R. § 416.974(b)(2)(i); Social Security Administration Programs Operations Manual System, DI 10501.015. Thus, Mijenes has not met her burden of showing that the ALJ erred in determining that her work experience as a housekeeper qualified as past relevant work. *See Barnes v. Sullivan*, 932 F.2d 1356, 1359 (11th Cir. 1991) ("[A] claimant has the burden of showing that certain work experience is not past relevant work.").

### E. Weight Assigned to Medical Opinion Evidence

■ Mijenes argues that the ALJ improperly weighed the medical opinion evidence. Specifically, she asserts that the ALJ erred by assigning more weight to the opinions of the state agency medical consultants than to the opinion of her treating physician, Dr. De La Vega.

When evaluating the medical opinion evidence, the ALJ must give the opinion of a treating physician "substantial or considerable weight" unless there is good cause not to do so. *Winschel*, 631 F.3d at 1179 (quotations omitted). We have nevertheless concluded that good cause exists for affording less weight to a treating physi-

cian's opinion when: "(1) [that] opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241. Moreover, the opinion of a treating physician may be entitled to less weight when the physician's assessment conflicts with the claimant's own reported daily activities. *See id.* If the ALJ chooses to assign less weight to a treating physician's opinion, however, he must clearly articulate his reasons for doing so. *Id.*

Mijenes's medical record includes a mental assessment of ability to do work-related activities from Dr. De La Vega dated March 24, 2013, in which Dr. De La Vega opined that Mijenes's ability to do work-related activities was poor in most areas, including making occupational adjustments, following detailed instructions, behaving in an emotionally stable manner, predictability, and reliability. Further, she concluded that she was generally unable to do work because of her bipolar disorder and mood instability. The record also includes state agency consultative examinations dated November 1, 2011, and January 18, 2012, from Dr. J. Patrick Peterson and Dr. Keith Bauer, respectively, in which Drs. Peterson and Bauer concluded that Mijenes had mild restrictions in activities of daily living, mild difficulty in maintaining social functioning, mild difficulty in maintaining concentration, persistence, and pace, and had no episodes of decompensation. They also determined that Mijenes's affective and personality disorders were not severe and did not restrict her ability to perform work-related activities. The ALJ assigned little weight to Dr. De La Vega's opinion because it was not supported by the clinical signs and findings, and it was inconsistent with other evidence in the record, including Mijenes's own re-

ported daily activities. The ALJ gave considerable weight to the mental assessments of Drs. Peterson and Bauer, as they were supported by objective medical evidence and the entire record.

Here, substantial evidence supports the ALJ's articulation of good cause for assigning minimal weight to Dr. De La Vega's opinion regarding Mijenes's work-related limitations. Specifically, Dr. De La Vega's opinion was not bolstered by other evidence in the record. Of note, Dr. De La Vega opined that Mijenes's ability to use judgment, function independently, act predictably in social situations, behave in an emotionally-stable manner, and remember detailed instructions were poor, but treatment notes from Mijenes's other treating psychiatrist, Dr. Fernando Gonzalez, indicated that Mijenes presented as goal-directed, coherent, relevant, and with appropriate affect. And while Dr. De La Vega's own treatment notes state that Mijenes experienced depression, anxiety, and irritable moods, Dr. De La Vega had also indicated that Mijenes was alert, fully-oriented, and exhibited goal-oriented speech.

Mijenes's testimony and reported daily activities also support the ALJ's decision not to assign controlling weight to Dr. De La Vega's opinion. Mijenes testified that she lives with her two children, she drives short distances, she sometimes cooks, and she cares for the two-year-old daughter with help from her elder daughter. Mijenes's elder daughter reported that Mijenes does laundry, cooks simple meals, pays for the utilities and household expenses, cares for the family pet, and takes care of her very young daughter. In short, substantial evidence supported the ALJ's decision to afford less than controlling

weight to Dr. De La Vega's opinion regarding Mijenes's work-related limitations.

Further, the ALJ did not place undue weight on the assessments of the state agency medical consultants. Indeed, the ALJ's decision was based on the entire medical record, including not only the assessments of the state agency medical consultants but also the findings of Mijenes's treating physicians, the 2011 inpatient-psychiatric evaluation, and Mijenes's own disability reports and testimony. *See* 20 C.F.R. § 416.927(e)(2)(i) (explaining that assessments by the state agency may be considered expert opinions).[2]

Mijenes also challenges the weight assigned to the opinions of the state agency medical consultants because they did not take into account her 2011 inpatient-psychiatric evaluation. Again, the ALJ considered the psychiatric evaluation in his decision, so the fact that the records from Mijenes's psychiatric evaluation were not available to the state agency medical consultants when they rendered their opinions is of no consequence. Indeed, the ALJ clearly considered evidence other than the opinions of the state agency medical consultants by finding that Mijenes was moderately limited in maintaining concentration, persistence, and pace—an area which the state agency medical consultants concluded she had only mild restrictions. Accordingly, the ALJ did not improperly weigh the medical opinion evidence.

## F. Credibility Determination

Mijenes further asserts that substantial evidence does not support the ALJ's determination that her subjective testimony was not fully credible. To establish a disability based on subjective testimony of pain and other symptoms, the claimant must estab-

---

**2.** Although the regulations governing the evaluation of medical evidence were recently amended, the version effective March 27, 2017, does not apply to the present claim. *See* 20 C.F.R. § 416.927 (2017); 20 C.F.R. § 416.920c (2017).

lish: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson*, 284 F.3d at 1225.

We have determined that credibility determinations are within the province of the ALJ. *Moore*, 405 F.3d at 1212. However, if the ALJ rejects a claimant's subjective testimony regarding pain, the ALJ must articulate specific reasons for doing so. *Wilson*, 284 F.3d at 1225. Otherwise, the claimant's testimony must be accepted as true. *Id.* Although the ALJ need not cite to "particular phrases or formulations" to support the credibility determination, the ALJ must do more than merely reject the claimant's testimony, such that the decision provides a reviewing court a basis to conclude that the ALJ considered the claimant's medical condition as a whole. *Dyer*, 395 F.3d at 1210 (quotations omitted).

■ Here, substantial evidence supports the ALJ's determination that Mijenes's statements regarding the intensity, persistence, and limiting effects of her symptoms were not fully credible. Mijenes testified that she could not work because of her depression, bipolar disorder, lack of energy, aggression, and inability to concentrate. The ALJ discredited Mijenes's statements concerning the extent of her limitations, concluding that they were not supported by the objective medical evidence or the disability reports concerning her daily activities.

As noted by the ALJ, Mijenes's daughter's description of the activities that Mijenes could perform included taking care of her young daughter, cooking, driving short distances, taking care of the family pet, and doing laundry. The nature of Mijenes's medical treatment for bipolar and mood disorders also weakens Mijenes's contention that she is disabled. Indeed, the record shows that Mijenes missed several appointments with her psychiatrists throughout 2011 and 2012. The treatment that she did receive consisted primarily of outpatient medication management, with the exception of the one inpatient-psychiatric evaluation in November 2011. But even during that inpatient evaluation, Mijenes presented with intact cognitive functioning, attention and concentration, and memory, as well as good insight and judgment, abstract thinking, calculation, and knowledge of information. Because the ALJ articulated clear reasons for discrediting Mijenes's subjective complaints regarding the extent of her limitations and those reasons are supported by substantial evidence, we will not disturb the ALJ's finding. *See Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) ("A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court.").

## III. CONCLUSION

For all of the above reasons, we affirm the district court's order affirming the Commissioner's denial of Mijenes's application for supplemental security income.

**AFFIRMED.**